38 N.J. Super. 132 (1955)
118 A.2d 64
TENNESSEE GAS TRANSMISSION COMPANY, A CORPORATION OF THE STATE OF DELAWARE, PLAINTIFF-RESPONDENT,
v.
LOUIS A. HIRSCHFIELD, AND MARGOT HIRSCHFIELD, HIS WIFE, DEFENDANTS-APPELLANTS, AND THE TOWNSHIP OF MAHWAH, ETC., ET ANO., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 24, 1955.
Decided November 18, 1955.
*134 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Irving C. Evers argued the cause for plaintiff-respondent (Mr. Walter H. Jones, attorney).
Mr. Howard Stern argued the cause for defendants-appellants (Mr. Peter Hofstra, attorney).
The opinion of the court was delivered by CLAPP, S.J.A.D.
Plaintiff, Tennessee Gas Transmission Company, seeks to obtain, through this condemnation action, an easement across the lands of the defendant, Louis A. Hirschfield, for the purpose of laying and operating a pipe line for the transmission of natural gas. The defendants, Mr. and Mrs. Hirschfield (she may have an interest in the lands), concede that plaintiff has the power of eminent domain. Their chief contention  here and in the court below  is that in selecting the route for the pipe line through their *135 lands, plaintiff exceeds and abuses the power vested in it. The trial court found against defendants on the point, giving judgment for the plaintiff and appointing condemnation commissioners. Mr. and Mrs. Hirschfield appeal.
We are presented first with a procedural question, namely, whether, as plaintiff argues, this judgment is interlocutory and appealable only with leave of court under R.R. 2:2-3(b) (no leave was given here); or whether it is interlocutory and appealable as of right under R.R. 2:2-3(a) (3) or (4), cf. Bergen County Sewer Authority v. Borough of Little Ferry, 7 N.J. Super. 213, 218 (App. Div. 1950), dealing with former practice, appeal dismissed 5 N.J. 548 (1950); or whether it is a final judgment. Cf. City of Trenton v. Lenzner, 16 N.J. 465, 472 (1954). If it is interlocutory, the appeal should have been taken within the time provided by R.R. 1:3-1(c).
The nature of a condemnation proceeding was altered on July 1, 1953. Prior thereto, the judge before whom the proceeding was brought was a mere legislative agent; it was his duty to enter an order appointing condemnation commissioners if it appeared, first, that due notice had been given and, second, that the petition for relief disclosed on its face prima facie a power to effect the expropriation. The landowner's remedy in case of an excess or abuse of this power was: before September 15, 1948, through a writ of certiorari, Ryan v. Housing Authority of City of Newark, 125 N.J.L. 336, 342 (Sup. Ct. 1940), N.J.S.A. 20:1-8; thereafter and to November 3, 1952, through a separate proceeding in lieu of prerogative writ brought in the Superior Court, Law Division (with the same judge often called upon to review the order he himself had made appointing commissioners), Bergen County Sewer Authority v. Borough of Little Ferry, 5 N.J. 548 (1950); and thereafter to July 1, 1953, through an appeal to the Appellate Division (with the proofs, where necessary, taken in somewhat cumbersome fashion during the appeal), In re Buckeye Pipe Line Co., 13 N.J. 385, 388 (1953).
*136 On July 1, 1953, the amendment to N.J.S.A. 20:1-2 became effective. By the express terms of this statute the action
"for the appointment of three commissioners to fix the compensation to be paid for the taking of the property"
becomes "an action in the Superior Court" (italics added), a judicial action. Morris May Realty Corp. v. Bd., etc., County of Monmouth, 18 N.J. 269, 275 (1955). The statute continues with this explicit provision:
"In any such action, the court shall have and shall exercise its full jurisdiction, including jurisdiction to determine the right to exercise the power of eminent domain; and the court may proceed in the action in a summary manner or otherwise."
Today in a condemnation action (which is to be prosecuted as a summary action under R.R. 4:85, see R.R. 4:92-1) the court takes cognizance not only of the application for the appointment of commissioners but also of all issues that can appropriately be considered in the cause (cf. N.J. Const., Art. VI, Sec. III, par. 4), including any question as to the power to condemn or an abuse of that power. A single judgment will usually be entered appointing commissioners and disposing of these other issues; and after it is entered, no further action is required of the trial judge with respect to the cause. This, then, constitutes the "final judgment" provided for by R.R. 4:85-5.
It is true that the parties may be said to be still proceeding in the cause when they go before the commissioners. But the commissioners, after preparing their report, merely file it with the court (N.J.S.A. 20:1-10), and it is not necessary to bring it on before a judge for confirmation. Our New Jersey practice is to be contrasted with that obtaining in many jurisdictions where an order or judgment must be entered confirming the commissioners' report, see e.g., Luxton v. North River Bridge Co., 147 U.S. 337, 13 S.Ct. 356, 37 L.Ed. 194 (1893); in those jurisdictions, this becomes the final judgment for purposes of appeal. 6 Nichols, Eminent Domain (3rd ed. 1953), 179, 180.
*137 It might be clarifying to add that under the New Jersey practice, if an appeal is taken from the commissioners' report to the Superior Court, Law Division, in order to secure a trial before the court (N.J.S.A. 20:1-16, R.R. 4:92-6), the judgment entered thereon in that division (R.R. 4:92-8; N.J.S.A. 20:1-23 et seq.) constitutes another final judgment for purposes of appeal to the Appellate Division. Cf. Antman v. Connecticut Light & Power Co., 117 Conn. 230, 167 A. 715, 718 (Sup. Ct. Err. 1933).
We conclude that the judgment below was final.
This brings us to a consideration of the principal question. The route proposed by the plaintiff for the laying out of its pipe line in the area in question is 50 feet wide. It runs from a point marked A on a certain sketch in evidence, thence along the boundary line of a lot designated on the sketch as lot No. 9, thence over lots Nos. 13, 12, 15 and 19 to point B  crossing, all told, five lots. About three-eighths of this course from A to B passes along the boundary line of lot No. 9  suggesting, as defendants' expert himself indicated, that it was laid out so as to interfere as little as possible with the development of that lot  "land planning," the expert called it. On the other hand, of the two routes proposed by defendants' expert, the one relied upon by them on the appeal would cut directly across lots Nos. 9, 10, 11, 13, 14, 15 and 19, seven lots, without any regard for this matter of land planning. It is to be observed that this route avoids all but a corner of defendants' property.
Defendants' expert testified that
"the biggest advantage [of this route last mentioned] in a construction standpoint is that it is the most direct route * * * somewhere in the neighborhood of 300 feet" shorter;
and that the shorter route would reduce the cost of maintenance. Furthermore he indicated that the two obtuse angles (of about 140 degrees each) in the course laid out by the plaintiff, which would require bends to be made in the pipe line, would be eliminated by his proposal; and the elimination of these bends would reduce the cost of pumping.
*138 We find it to be entirely settled law that the quantity of land to be taken, as well as its location, are matters lying within the discretion of the body endowed with the right of eminent domain; and further that the exercise of this discretion will not be upset by the courts in the absence of an affirmative showing of fraud, bad faith or manifest abuse. City of Trenton v. Lenzner, 16 N.J. 465, 473, 481 (1954)  where the city had other land in the locality which it could have used for a parking lot; City of Newark v. New Jersey Turnpike Authority, 7 N.J. 377, 380, 382, 385 (1951)  where one of Newark's complaints was that in the laying out of the Turnpike, there was "an excessive taking of potentially valuable land"; Burnett v. Abbott, 14 N.J. 291 (1954); Town of Bloomfield v. New Jersey Highway Authority, 18 N.J. 237, 240 (1955); Transcontinental Gas Pipe Line Corp. v. Borough of Milltown, 93 F. Supp. 287, 292 (D.C.D.N.J. 1950); 29 C.J.S., Eminent Domain, § 92, p. 888.
The question then is whether the plaintiff in laying out the proposed route, was actuated by improper motives, bad faith or some other consideration amounting to a manifest abuse of the power of eminent domain. Defendants complained below and they claim here that they were deprived of their right of cross-examination. At the hearing in this summary action under R.R. 4:85, plaintiff submitted merely a most general affidavit without oral proofs, whereas defendants presented not only an affidavit apparently (which has not been printed in the appendix), R.R. 4:85-4, but also oral testimony.
The situation presented by R.R. 4:85-5 is not unlike that arising on a motion for summary judgment in a plenary action where the issue to be decided is whether the moving party has acted in good faith. The defendants here allege that the plaintiff proposes to go to the very substantial expense of condemning more land, 300 feet more, than the minimum needed for its purposes and has unnecessarily chosen a course which will require two bends to be made in the pipe line, as above stated. Where there is sufficient reason to inquire into and elicit an explanation of the plaintiff's motivations, *139 the defendant "should generally not be denied the opportunity to" cross-examine plaintiff's affiant "before the trier of fact." Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 76 (1954). Here moreover is a situation, also adverted to in the Judson case, where the defendants may have to prove their charge as to plaintiff's motives "from what [they] can draw from the" plaintiff (17 N.J., at page 76).
We have decided to retain the appeal but to remand the proceedings to the trial court with the direction that they be reopened to enable defendants' counsel to cross-examine plaintiff's affiant and to afford the parties the privilege of introducing such additional evidence and of taking such other proceedings as may be occasioned by the narrow issue under consideration. A supplemental appendix, including therein this evidence and other proceedings, along with such further findings and conclusions of the trial court as to it may seem appropriate, will be filed with this court by January 23, 1956; and the case will then be set down for further argument before us  without additional briefs, unless counsel ask leave to file them. The defendants cannot under this course complain that the summary procedure has squeezed them out of court.
Remanded.