226 N.J. Super. 256 (1988)
543 A.2d 1050
STATE OF NEW JERSEY, BY THE COMMISSIONER OF TRANSPORTATION, PLAINTIFF-RESPONDENT,
v.
HESS REALTY CORPORATION, A CORPORATION OF DELAWARE, STATE OF NEW JERSEY, THE BOROUGH OF RIVERDALE, IN THE COUNTY OF MORRIS, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFENDANTS-RESPONDENTS. GREG'S HESS STATION, INC., A NEW JERSEY CORPORATION, DEFENDANT-THIRD-PARTY PLAINTIFF-APPELLANT,
v.
AMERADA HESS CORPORATION, A DELAWARE CORPORATION, THIRD-PARTY DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted June 13, 1988.
Decided July 7, 1988.
*258 Before Judges PETRELLA, DREIER and ASHBEY.
Clemente, Strenk & Kiernan attorneys for appellant Greg's Hess Station, Inc. (Jeffrey P. Clemente of counsel and on the brief).
W. Cary Edwards, Attorney General of New Jersey, attorney for respondent State of New Jersey, by the Commissioner of Transportation (Michael R. Clancy, Deputy Attorney General, of counsel; John J. Reilly, Deputy Attorney General, on the brief).
Wilentz, Goldman & Spitzer, attorneys for respondent Hess Realty Corporation and third-party defendant-respondent Amerada Hess Corporation (Marvin J. Brauth of counsel; Marvin J. Brauth and Kenneth M. Denti on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
*259 The State of New Jersey, by the Commissioner of Transportation, filed a condemnation action for certain premises owned by Hess Realty Corporation (Hess). Greg's Hess Station, Inc. (Station) was joined as a defendant because of its potential interest as a tenant, occupant or lessee on the land and premises. This appeal by Station is from orders entered on October 14, 1986 in the condemnation action dismissing its counterclaim for compensation for loss of franchise rights and from the dismissal of its cross-claim against Hess and its third-party complaint against Amerada Hess Corporation (Amerada) in which it sought a share of compensation received by them.
Hess owned the land and facilities thereon and leased same to Amerada which granted the franchise. Station operated its business on the subject property under a franchise agreement with Amerada which was for the sole purpose of operating a gasoline station limited to the sale of Amerada's products.
Station argues on its appeal that its loss of franchise rights is a separate taking of property entitling it to a separate award of compensation from the State. It also argues that even if it is not entitled to direct compensation, it is entitled to a portion of the compensation awarded to Amerada or Hess.
Gregory Forte acquired the subject franchise on January 12, 1978, with the consent of Hess, from the prior franchise holder to operate an existing Hess gasoline station on Route 23 in Riverdale. Forte as sole stockholder formed the corporation which became known as Greg's Hess on March 13, 1978, and thereafter operated the gas station in the corporate form.[1] On August 25, 1981 Forte signed a revised "Dealer Agreement" with Amerada which provided for yearly renewals, unless written notice not to renew was given by either party as provided by paragraph 17. That paragraph also set forth various other *260 bases for termination of the franchise under specified circumstances, including:
(iii) If the Station or any part thereof is taken or condemned for a public or quasi-public use, this Agreement shall, at the option of Hess, terminate as of the date title shall vest in the condemnor and Dealer shall have no claim or interest in or to any award of damages for such taking, including but not limited to any claim for the value of any unexpired portion of the term of this Agreement, and assigns to Hess all claims and rights in connection with any such taking or condemnation, and agrees to execute any documents in connection therewith or in confirmation thereof.
Hess notified Forte by letter of March 25, 1985 that his Dealer Agreement would be terminated effective June 30, 1985 as a result of the State's intended condemnation of the property. The State paid Station relocation expenses of $6,044.50 in accordance with N.J.S.A. 27:7-75 as "fixed expense in lieu of moving costs."
Initially, the State challenges the timeliness of Station's appeal filed on October 27, 1987 from the October 14, 1986 orders. Prior to Station filing its notice of appeal another panel of this court on January 5, 1987 denied Station's motion (filed October 29, 1986) for leave to appeal the 1986 orders. The Commissioners' report fixing compensation to be paid by the DOT at $372,500 was issued on September 10, 1987. This appeal was filed thereafter.[2] Although the jury trial has not yet been held, Station appealed from the October 14, 1986 orders of dismissal asserting that "all issues, as to all parties under docket No. L-29215-86, were disposed of by the filing therein of the Report of Commissioners on September 10, 1987." The jury trial as to damages was to be instituted under a different docket number.
The State correctly points out that Station should have filed a notice of appeal from the judgment appointing Commissioners, rather than having moved for leave to appeal (which was denied by another Part of this court). All issues to be *261 decided, other than that of value and damages, should have been raised and resolved by the trial court before entering judgment appointing Commissioners. See State v. New Jersey Zinc Co., 40 N.J. 560, 572 (1963); State v. Orenstein, 124 N.J. Super. 295, 298 (App.Div. 1973); Tennessee Gas Transmission Co. v. Hirshfield, 38 N.J. Super. 132, 136 (App.Div. 1955).[3] Despite the fact that the orders of dismissal were entered subsequent to the entry of the judgment appointing Commissioners, they technically relate back to that judgment. The judgment appointing Commissioners, because it disposes of all issues other than value, is considered a final judgment, which may be appealed of right. State v. New Jersey Zinc Co., supra (40 N.J. at 572); Tennessee Gas Transmission Co. v. Hirshfield, supra (38 N.J. Super. at 136-137). However, because Hess and the DOT have appealed the Commissioners' award, the State argues "that the report of Commissioners is not a final judgment as to the issue of value but is in fact a nullity. The filing of the Commissioners' report is thus not a final judgment from which Greg's Hess can appeal as of right. N.J.S.A. 20:3-13(b); R. 4:73-6." Rather than being premature as argued by the State, the appeal is actually late. In view of the circumstances and the present posture of the case, we nonetheless grant Station leave to appeal nunc pro tunc from the judgment appointing Commissioners.
In dismissing the claims of Station for participation in the condemnation proceeding and in the award the trial judge relied on our decision in Jersey City Redevelopment v. Exxon Corp., 208 N.J. Super. 53 (App.Div. 1986). In our view, that decision is controlling and Station is not entitled to participate in the condemnation. We also conclude that in any event the *262 unit rule would apply. N.J. Highway Authority v. J. & F. Holding Co., 40 N.J. Super. 309, 314 (App.Div. 1956); N.J. Sports & Exposition Auth. v. E. Rutherford, 137 N.J. Super. 271, 279-281 (Law Div. 1975). See also State v. New Jersey Zinc Co., supra (40 N.J. at 574). The condemnee is not entitled to any independent compensation for the value of the business located on the condemned property unless the government plans to continue operation of a business it acquires by condemnation. City of Trenton v. Lenzner, 16 N.J. 465, 476-477 (1954), cert. den. 348 U.S. 972, 75 S.Ct. 534, 99 L.Ed.2d 757 (1955). There is no basis for either a separate award for either a tenant or franchisee, State v. New Jersey Zinc Co., supra (40 N.J. at 574), and neither the loss of the business nor a loss of a franchise is a separate compensable item. State v. Gallant, 42 N.J. 583, 587 (1964).
Like the franchisee in Jersey City, Station relies on the provision in the federal Petroleum Marketing Practices Act, 15 U.S.C.A. § 2801 et seq. (PMPA), which requires the franchisor to "fairly apportion between the franchisor and the franchisee compensation, if any, received by the franchisor based upon any loss of business opportunity or good will...." 15 U.S.C.A. § 2802(d)(1). Because property is valued at its highest and best use for condemnation purposes, see State, Comm'r of Transp. v. Cooper Alloy Corp., 136 N.J. Super. 560, 567-569 (App.Div. 1975), and because a business's prospective earning power is "evidenced in considerable part by past earnings," City of Trenton v. Lenzner, supra (16 N.J. at 479), Station argues that loss of business opportunity is included in a compensation award in this State. We rejected a similar argument in Jersey City, and see no reason to deviate from that reasoning here. 208 N.J. Super. at 58.
In Jersey City we concluded that a franchise dealer was not entitled to an award of compensation from the condemnor for the value of the lost franchise business and good will. We there said:

*263 ... Rodriguez and the amicus invite us to read `property' in the Eminent Domain Act of 1971, N.J.S.A. 20:3-1 et seq., to include franchise contract rights, especially when tied so closely to the real estate as in the case of a gas station. The invitation is a tempting one, in view of Rodriguez's situation, but such a reading would fly in the face of the contrary definition of property in N.J.S.A. 20:3-2(d), which solely concerns land, `or any interest in land,' and physical improvements, fixtures, accessories, etc. Against the long historical background, we can not define a franchise which includes a lease as an interest in land or as `an article' affixed to the property or specially adapted therefor. Arguments are made that the body of State law barring compensation for good will and business losses was ill-considered at its inception, and that it deprives Rodriguez of substantive due process and equal protection. We are bound by the rulings of the New Jersey Supreme Court, and arguments that they are wrong or create constitutional violations should be made there. [208 N.J. Super. at 59 footnote omitted].
As we noted in footnote 4, the views of amicus as to damages was essentially contained in a law review article written by the attorney for amicus and appearing at 15 Seton Hall L. Rev. 483 (1985).
Although a franchise holder might well be entitled to participate in allocation proceedings to obtain a share of the award, N.J. Sports & Exposition Auth. v. E. Rutherford, supra (137 N.J. Super. at 280), Station, as part of its agreement, contracted away any right to share in the compensation award. Id. at 279 see also Jersey City Redevelopment v. Exxon Corp., supra (208 N.J. Super. at 57-58). There is no reason not to enforce this clearly set forth contract provision here. U.S. Pipe & Foundry Co. v. American Arbitration Ass'n, 67 N.J. Super. 384, 393 (App.Div. 1961). Even if we considered the franchise agreement as a contract of adhesion, and we do not so hold here, this provision would be enforceable since it is clearly stated and was bargained for as part of the franchise. Vasquez v. Glassboro Service Ass'n, Inc., 83 N.J. 86, 106 (1980). Indeed, while similar franchise agreements were once considered contracts of adhesion, their one-sidedness precipitated the protections afforded to the franchisee by the federal PMPA and the Franchise Practices Act, N.J.S.A. 56:10-1 et seq. These declarations of legislative intent define the redress of any unequal bargaining power, superseding the protection afforded *264 by the adhesion concept at common law. Under all the circumstances, we see no reason to depart from our holding in Jersey City, supra.
Waiver clauses, notwithstanding the claim of inequality of bargaining position, "are commercially common and normally enforceable." 208 N.J. Super. at 57-58. See also N.J. Highway Authority v. J. & F. Holding Co., supra (40 N.J. Super. at 314); N.J. Sports & Exposition Auth. v. E. Rutherford, supra (137 N.J. Super. at 279). As we also said in Jersey City, neither the PMPA nor the New Jersey Franchise Practices Act prohibits such waiver clauses. There is thus no reason to refuse to enforce that waiver. Station has waived its right to compensation or allocation of the value of its leasehold from the award by virtue of the provisions of the dealer agreement specifying its rights upon condemnation. See 208 N.J. Super. at 57-58.
Affirmed.
DREIER, J.A.D. (Dissenting).
Greg's Hess Station, Inc., defendant and third-party plaintiff, has appealed from the dismissal of its counterclaim, cross-claim and third-party complaint by which it sought a separate award for its gas station franchise or an apportionment of the award to be granted to Amerada Hess Corporation. While there is no question that the trial judge was correct in dismissing the claims since he was bound by Jersey City Redevelopment Agency v. Exxon Corp., 208 N.J. Super. 53 (App.Div. 1986), I disagree with the conclusions of the Jersey City case. And see N.J. Sports & Exposition Auth. v. E. Rutherford, 137 N.J. Super. 271 (Law Div. 1975). I would therefore reverse and remand for a determination of the factual circumstances surrounding the contractual waiver of the tenant's right to share in the allocation of the condemnation award.
The facts of this case show a usual oil company franchise agreement in which the franchisee waives all rights to condemnation awards. Notwithstanding the legal effect attributed to *265 the relevant statutes by the majority (at 263-264), there has been no factual determination of whether this waiver was bargained for, was equitable under the circumstances, or, in fact, was anything more than an unconscionable and a potentially unenforceable provision in a contract of adhesion. The clause permits the value of the franchisee's years of work to be destroyed by a condemnation, with the lessor/franchisor obtaining a windfall at the expense of the lessee/franchisee. When the location is lost, there is no requirement that the owner put the proceeds into a new location and offer it to the lessee. The owner can reap the benefits, purchase an equivalent location with the proceeds, and then sell a new franchise to another franchisee. This new sales price is a windfall to the franchisor and a loss to the original franchisee.
The condemnation value of the real estate to the lessor/franchisor, however, is determined by a capitalization of the income derived from the property, which directly relates to the tenant's efforts in generating sales. Even if the termination of the franchise is not a compensable consideration under State v. Gallant, 42 N.J. 583, 587 (1964),[1] the tenant ordinarily would have been entitled to recover from the landlord the portion of the award that was attributable to its lease. In this case, the annual lease is perpetually renewable by operation of law under Shell Oil Co. v. Marinello, 63 N.J. 402 (1973), cert. den. 415 U.S. 920, 94 S.Ct. 1421, 39 L.Ed.2d 475 (1974), and the federal Petroleum Marketing Practices Act, (PMPA), 15 *266 U.S.C.A. § 2802(b); and therefore ordinarily there would have been a fair division of the condemnation proceeds between the landlord and tenant. The waiver of benefits provision in the contract apparently destroyed this right.
The PMPA, in 15 U.S.C.A. § 2802(d)(1), supports a ruling that the waiver of condemnation benefits clause is unconscionable. The Act requires that "the franchisor shall fairly apportion between the franchisor and the franchisee compensation, if any, received by the franchisor based upon any loss of business opportunity or good will." I understand that in New Jersey there is no direct condemnation award for business opportunity or good will. However, since the value of the location is determined by a capitalized income approach, which in effect recognizes the future business opportunities at the site, I would read the federal provision as encompassing the right of the tenant to be paid for its leasehold interests by way of apportionment of the landlord's award. This analysis would warrant an award under the PMPA. I realize that even the PMPA permits the termination of the franchise if the premises are condemned (15 U.S.C.A. § 2802(c)(5)), but this should not affect the payment for the lease, if a court determines that the blanket waiver of all benefits was unconscionable. See N.J. Highway Auth. v. J. & F. Holding Co., 40 N.J. Super. 309 (App.Div. 1956).
While the conclusion I reach is in disagreement with both Jersey City Redevelopment Agency v. Exxon Corp., supra, and N.J. Sports & Exposition Auth. v. E. Rutherford, supra, I would find that both the application of the PMPA and broadened unconscionability principles justify a contrary decision. The franchisee should at least have its day in court.
Consequently, I would affirm the dismissal of the counterclaim on the Supreme Court authority of State v. Gallant, supra, reverse the dismissal of the cross-claim and third-party complaint against Amerada Hess, and remand for trial on the shared-compensation issue after a hearing on the unconscionability of the waiver clause in the lease.
NOTES
[1] No party has argued that Forte is a proper or necessary party.
[2] In addition, Hess appealed to the Law Division from the Commissioners' report and demanded a jury trial. The DOT filed a cross-appeal.
[3] Title disputes can be tried before or after damages are determined. R. 4:73-2(b). Disputes as to allocation of the proceeds of an award are tried after the award has been paid. R. 4:73-9(b). Station's contention that it was entitled to a share of the award received by Hess would be subject to the allocation proceeding.
[1] There are cogent arguments against this conclusion, and the time may have come for the Supreme Court to reanalyze this situation, especially as it relates to franchises terminated upon condemnation. In Westfield Centre Serv. v. Cities Serv. Oil Co., 86 N.J. 453 (1981), the Court apparently recognized that a franchise termination in accordance with the Franchise Practices Act is permissible, but noted the applicability of the federal Petroleum Marketing Practices Act. While I agree that the direct compensation route may well be precluded by present law, I would commend to the Supreme Court's attention the arguments raised by Professor Risinger in "Direct Damages: The Lost Key to Constitutional Just Compensation When Business Premises Are Condemned," 15 Seton Hall L.Rev. 483 (1985).