NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS.  A-2278-17T4
       A-2279-17T4
       A-2507-17T4

STATE OF NEW JERSEY,
BY THE DEPARTMENT OF
ENVIRONMENTAL PROTECTION,

**APPROVED FOR PUBLICATION**

**April 16, 2020**

**APPELLATE DIVISION**

  Plaintiff-Respondent/
  Cross-Appellant,

v.

10.041 ACRES OF LAND IN THE
BOROUGH OF POINT PLEASANT
BEACH, OCEAN COUNTY, NEW
JERSEY; RISDEN'S BEACH
CORPORATION, fee owner, and
JACQUELINE RISDEN, mortgagee,

  Defendants-Appellants/
  Cross-Respondents.

_____

STATE OF NEW JERSEY,
BY THE DEPARTMENT OF
ENVIRONMENTAL PROTECTION,

  Plaintiff-Respondent,

v.

0.808 ACRES OF LAND IN THE
BOROUGH OF POINT PLEASANT
BEACH, OCEAN COUNTY, NEW

JERSEY; THE BEACH
CONDOMINIUM ASSOCIATION, INC.,
and RISDEN'S BEACH CORP.,

      Defendants-Appellants.

_____

STATE OF NEW JERSEY,
BY THE DEPARTMENT OF
ENVIRONMENTAL PROTECTION,

      Plaintiff-Respondent/
      Cross-Appellant,

v.

3.814 ACRES OF LAND IN THE
BOROUGH OF POINT PLEASANT
BEACH, OCEAN COUNTY, NEW
JERSEY, and BRADSHAW'S BEACH
HOMEOWNERS ASSOCIATION, LLC,

      Defendants-Appellants/
      Cross-Respondents.

_____

      Argued February 3, 2020 – Decided April 16, 2020

      Before Judges Fasciale, Rothstadt and Moynihan.

      On appeal from the Superior Court of New Jersey,
      Law Division, Ocean County, Docket Nos. L-2982-17,
      L-2985-17 and L-3079-17.

      John H. Buonocore, Jr., argued the cause for
      appellants/cross-respondents Risden's Beach Corp.
      and Bradshaw's Beach Homeowner's Association,
      LLC (McKirdy, Riskin, Olson & DellaPelle, PC,
      attorneys; John H. Buonocore, Jr., on the briefs).

Brian W. Keatts argued the cause for respondent/cross-appellant (Rutter & Roy, attorneys; Brian W. Keatts and Heather N. Oehlmann, on the briefs).

The opinion of the court was delivered by

FASCIALE, P.J.A.D.

Risden's Beach Corporation, Bradshaw's Beach Homeowner's Association, and Beach Condominium Association are owners of Point Pleasant oceanfront properties that are operated as commercial beaches.[1] The judge issued final judgments authorizing the Department of Environmental Protection (DEP) to take easements for a shore protection system known as the Manasquan Inlet to Barnegat Inlet Hurricane and Storm Damage Reduction Project (the Project). Risden's Beach Corporation (Risden's) and Bradshaw's Beach Homeowner's Association (Bradshaw's) (collectively defendants) appeal from those judgments, which included handwritten paragraph eight stating, "[t]his [c]ourt finds that the taking in this matter shall not interfere with the

---

[1] Beach Condominium Association (Beach Condo) is not participating in the appeal. We listed these appeals (State v. 3.814 Acres of Land in the Borough of Point Pleasant Beach, State v. 10.041 Acres of Land in the Borough of Point Pleasant Beach, and State v. .808 Acres of Land in the Borough of Point Pleasant Beach (collectively Risden's)) back-to-back with sixty-three consolidated cases known as State v. 1 Howe Street Bay Head, LLC (Howe); an individual appeal in New Jersey Department of Environmental Protection v. Midway Beach Condominium Ass'n (Midway); and a pro se appeal entitled State v. Arthur Williams (A-1484-17) (Williams). On this date, we issued opinions in Howe, Midway, and Williams.

right of the property owner to operate a commercial/for profit beach open to the public." DEP cross-appeals, arguing that this paragraph was unnecessary. We direct that the judge delete this quoted language, and we affirm the judgments as to defendants, with further directions that the judge add "and their successors in interest or agents" in those paragraphs of the easement after the name of each defendant.

Risden's Beach Corporation owns and operates a commercial public beach in Point Pleasant. Its property consists of 10.85 acres between the boardwalk and the mean high-water line, known as Block 46.02, Lots 1 and 3. In addition, Beach Condo leases Risden's property that is 0.8 acres, known as Block 46.02, Lot 2, in which Risden's operates a commercial beach. Bradshaw's commercial beach consists of 3.814 acres, known as Block 17.02, Lots 13 and 14.

In November 2014 and January 2015, Donald L. Moliver, DEP's appraiser, sent notification letters to each defendant. Beginning in November 2015, Moliver conducted multiple inspections of defendants' properties. Defendants' counsel[2] expressed concerns about the easement language that gave DEP the right to operate the beaches. A DEP representative

---

[2] Defendants' attorneys represented Risden's and Bradshaw's, but not Beach Condo.

communicated that the language was "to ensure that if an association folds or fails to operate the beach, the State . . . could step in and operate the beach."

On February 21, 2017, Moliver valued Beach Condo's property at $5.29 million before the taking and $5.82 million after the taking. Moliver concluded that DEP should pay $1000 nominal consideration for the easement because the property's value would increase as a result of the taking.

On June 16, 2017, Moliver valued Bradshaw's property at $1.175 million before the taking and $1.233 million after the taking. Moliver speculated that just compensation was $6300, most of which would be paid to obtain a "[t]idelands license" over the new beach that the Project would create.

On July 20, 2017, Moliver valued Risden's property at $7.35 million before the taking and $8.1 million after the taking. Moliver's appraisal determined that the highest and best use of the beach property was recreational activity lots by paid patrons. Moliver noted that parking lot fees and beach badge sales generated the majority of the property's income. The appraiser concluded DEP should pay Risden's $1000 as nominal consideration for the easement.

On August 28, 2017, defense counsel identified numerous concerns with Risden's property appraisal and pointed out that Risden's generated $1.2

million in profits in 2015 that the appraiser ignored. Risden's did not make a counteroffer to DEP.

DEP's easements provided that it could "operate" a public beach on each property.[3] Each easement also included the following provision:

> Consistent with New Jersey law, during the summer season when lifeguard and other beach amenity services (e.g., beach maintenance, trash removal) are provided by [Risden's or Beach Condo or Bradshaw's[4]] to the public [Risden's or Beach Condo or Bradshaw's] may charge fees for daily and seasonal beach badges and/or passes, provided [Risden's or Beach Condo or Bradshaw's] allows audit of its records, and access and use of the beach, in accordance with N.J.A.C. 7:7-16.9 (q), (r), (s), (t) and (v)[.]

On September 15, 2017, Risden's and DEP representatives met, but were unable to come to an agreement regarding the easement's language.

On September 22, 2017, Risden's offered to waive any objection to the Project and permanently deed restrict its property to commercial public use, so long as DEP omitted the language authorizing it to operate a beach on the property. DEP rejected Risden's offer, reasoning that the Army Corps of Engineers (Army Corps) would not agree. But, DEP proposed to provide a letter stating it would not exercise its right to operate a commercial beach

---

[3] All easements in this matter include the same language.

[4] Each easement used the specific name of each defendant.

unless Risden's failed to do so. DEP's counsel informed defendants that Moliver's valuation included only the real estate, not Risden's business.

Bradshaw's agreed to abide by whatever resolution was reached in negotiations with Risden's. On October 25, 2017, Bradshaw's representatives met with DEP employees in an effort to reach a resolution. One week later, DEP filed its condemnation complaint against Bradshaw's.

At oral argument before the judge, DEP asserted that the language granting it the right to operate a public beach was necessary to "guarantee public access" and that the Army Corps required it. The record includes a certification from the Real Estate Division Chief for the Baltimore District of the Army Corps, which was submitted as part of a separate federal litigation. The certification notes the Army Corps' interpretation of what constitutes public access to beaches, and advised that charging reasonable user fees at publicly owned or operated beaches is permissible so long as the fees are subject to DEP regulation.

Given that their properties were already used for public beaches, defendants argue the judge erred because the takings were not necessary to create public use and access to the waterfront.

The judge found that the easement's language was too broad and ambiguous. But according to the judge, it "is clearly implied" from all the

documents DEP filed that the agency had no intention of operating the beach so long as the property continued to be used as a commercial beach; thus, any successor would stand in defendants' shoes. In her final orders, the judge included a handwritten paragraph eight, which stated that the takings would not affect defendants' abilities to operate commercial beaches on their properties.[5]

## I.

Condemning authorities have "[g]reat discretion . . . in determining what property may be taken for public purposes." Borough of Essex Fells v. Kessler Inst. for Rehab., Inc., 289 N.J. Super. 329, 337 (Law Div. 1995); see Township of West Orange v. 769 Assocs., L.L.C., 172 N.J. 564, 579 (2002).

Defendants argue that DEP's complaints should have been dismissed because the easements exceed the stated necessity to assure public access to the waterfront, given that their properties are operated as public beaches. Defendants believe that the purpose of the easement language is to oust them at a future date and operate the beaches in their stead.

Each easement DEP took for the Project permitted the agency to operate a public beach on the premises. DEP has maintained that this language is

---

[5] The language varied slightly in the two orders, and the judge did not include the additional language in her Beach Condo ruling.

necessary to secure federal funding.  In fact, in State v. North Beach 1003, LLC, 451 N.J. Super. 214, 240 (App. Div. 2017), this court concluded that "the Army Corps has interpreted its responsibility to include requiring public access and use of [p]roject areas funded by federal monies."  North Beach also held that N.J.S.A. 12:3-64 permits DEP, in its discretion, to take easements with a right of public access.  Ibid.

The fact that defendants currently operate public beaches on their properties does not ensure that they will continue to do so in the future.  Defendants could sell the properties to a buyer who prefers to have a private beach that is not accessible to the public, or they could choose to stop operating commercial beaches.  For these reasons, DEP used its discretion to take easements authorizing it to operate public beaches on the properties, and this authority is present in all easements under dispute.  See, e.g., id. at 239.

Defendants offered to deed restrict their properties to certify that they would continue to operate as public beaches, but DEP is not required to agree to defendants' terms.  Rather, DEP has discretion to decide how best to accomplish its goal of guaranteeing public access to the beaches.  And we see no abuse of that discretion.

Defendants argue that despite DEP's claim to the contrary, the Army Corps does not require that DEP take the right to operate a commercial beach

on their properties. At oral argument, defendants requested a hearing to determine whether the Army Corps in fact required the easement language. The judge accepted DEP's representation that the Army Corps required the language. According to the Army Corps, federal funding for the Project is conditioned on public access to the beaches. Thus, the easement language authorizing DEP to operate public beaches to ensure public access to the waterfront was consistent with Army Corps requirements, notwithstanding that the properties are currently operated as public beaches. We agree the record supports that the Army Corps required DEP to take the right to operate public beaches on all properties. See North Beach, 451 N.J. Super. at 240.

## II.

We reject defendants' argument that the language in the easement is vague and denies them substantive due process and just compensation. We do not find that the language is vague or that defendants were denied due process.[6]

The judge determined that the easement language created ambiguity inasmuch as it gave DEP the right to operate a public beach on defendants' properties, but did not protect defendants' property interests in operating the

---

[6] In January 2019, Risden's entered a contract for sale of its property. At oral argument, we learned that the sale occurred.

commercial beaches. In order to rectify this problem, the judge included paragraph eight in two of her final orders, which provided that the taking would not interfere with defendants' right to operate a for-profit public beach.

Defendants do not challenge the addition of paragraph eight or object to its removal as argued by DEP in its cross-appeal. They argue that, the easement language gives DEP a right to operate a commercial beach on their properties without paying just compensation for such a taking. This would give defendants only "sui generis status of a seasonal, limited-use, quasi-licensee-at-will of its own property." They claim that the only "property rights" they now have are the obligations to pay property taxes and to defend against tort liability. We disagree.

The easement clearly gives DEP a right to operate a public beach on defendants' premises. By inserting paragraph eight, the judge attempted to mitigate future possible losses of income, stating that nothing in the easements would interfere with defendants' ability to operate their commercial beaches. We understand the judge's desire to provide some protection for defendants' livelihoods, but we conclude that paragraph eight contradicts the easements' clear language authorizing DEP to operate a public beach.

> [N]ot all losses suffered by a condemnee are compensable. For example, damages or costs of a speculative nature are always noncompensable. Just compensation generally does not include losses or

costs that are incidental to a taking, such as loss to or destruction of good will, loss of profits, inability to relocate or frustration of the condemnee's plans. These items are generally held not to be directly attributable to the realty, but rather peculiar to the owner. The fact that these losses are noncompensable is justified on the grounds that their value is too speculative, remote and too uncertain for accurate measurement; that they depend on various factors not attributable to the land and, accordingly, furnish no reliable criteria for the fixing of market value at the time of the taking.

Similarly, loss of business profits derived from a going business conducted on the property taken is not the subject of independent compensation aside and apart from the market value of the land taken. Such a business loss is admissible only to show the highest and best use of the land before the taking and the inadaptability of the remaining land to continue such use.

[State by Comm'r of Transp. v. Cooper Alloy Corp., 136 N.J. Super. 560, 568-69 (App. Div. 1975) (citations omitted).]

It is true that the easement permits DEP to operate a public beach on defendants' properties. The appraisal accounted for "the practical and permitted uses of the site," including income generated by the property from beach badge sales and parking. Just compensation is meant to compensate only for changes in the value of the land as a result of the taking. See Borough of Harvey Cedars v. Karan, 214 N.J. 384, 389 (2013). According to Moliver's appraisal, there will be a net increase in the land's value, taking into

consideration defendants' sale of beach badges. And as the judge noted, challenges as to the amount of just compensation is a matter for the commissioners' consideration.

Also, DEP did not take an easement over defendants' entire properties, and defendants still have the right to operate a commercial beach on the properties that they exclusively retain. Thus, even if DEP eventually operated a public beach on the easement portion, defendants could continue to operate a commercial beach on the portion that remains in their exclusive possession.

Defendants argue that the easement final paragraphs are phrased in such a way that they are personal to the named owner and do not run with the land. Thus, any future owner of the property is not protected. In addition, they do not preserve the owners' exclusive rights to operate the beach and do not vest the owners with the power to decide who operates the beach. The judge reasonably interpreted these paragraphs to protect any of defendants' successors in interest, but we direct the judge add "and their successors in interest or agents" in those paragraphs after the name of each defendant.

Defendants believe the easement language is deliberately vague. According to defendants, the judge's handwritten additions in paragraph eight further demonstrate the uncertainty of the rights described in the complaint, and create a valuation problem which deprives them of just compensation in

the event DEP eventually decides to operate a public beach on their properties. We disagree.

First, Moliver's appraisals included a legal description of the properties and the exact description of DEP's easements. Second, the easements were not vague because they described—with specificity—exactly what DEP would take, including a metes and bounds description. Additionally, the complaints identify the properties by block and lot, the property owners, the property purchase dates, the required easements, and the just compensation amount. They also describe in detail the location, length, width, shape, and area of each easement.

Defendants also argue that the judge erred because the description of the acquired rights should have been clarified prior to the appointment of commissioners. The land to be taken must be described with such certainty as to leave no room for doubt. Hous. Auth. of Atl. City v. Atl. City Exposition, Inc., 62 N.J. 322, 328 (1973). We find no fault with this ruling.

The judge stated that the filed documents clarified that DEP had no intention of operating a public beach unless defendants decided not to do so. The language in the appraisal and the easements provided a clear statement of DEP's taking.

Defendants contend that all challenges to the valuation and damages must be settled prior to appointing commissioners and, in support, cite numerous cases standing for that proposition including:  State by Commissioner of Transportation v. Orenstein, 124 N.J. Super. 295, 298 (App. Div. 1973); State by Commissioner of Transportation. v. Hess Realty Corp., 226 N.J. Super. 256, 260-62 (App. Div. 1988); and New Jersey Sports & Exposition Authority v. Giant Realty Associates, 143 N.J. Super. 338, 346 (Law Div. 1976).

But here, all issues were decided prior to the commissioner appointment. The judge agreed that DEP was authorized to take the easements and could operate a public beach on the premises if defendants failed to do so.  DEP's easement was clear.  Valuation was the only issue left for the commissioners.

DEP claims that paragraph eight in the judge's final orders should be stricken because it conflicts with their rights under the easements to guarantee public access to the beach.  According to DEP, in order to be eligible for federal funding, the beaches must be accessible to the public.  But the court's additional language will jeopardize federal funding because it creates ambiguity as to DEP's rights.  We agree.

The judge attempted to protect defendants' commercial interests, but the language she added conflicts with DEP's rights to operate a public beach on

15

the properties. Importantly, defendants do not argue that this handwritten language should remain in the orders.

III.

Defendants also assert that DEP failed to satisfy the prelitigation requirements in N.J.S.A. 20:3-6 because the agency did not engage in bona fide negotiations. We disagree.

The Eminent Domain Act (EDA), N.J.S.A. 20:3-1 to -50, requires a condemnor to engage in "bona fide negotiations" with the property owner. N.J.S.A. 20:3-6. N.J.S.A. 20:3-6 "encourage[s] acquisitions without litigation, thus saving both the [condemnor] and the condemnee the expense and delay of litigation." Casino Reinvestment Dev. Auth. v. Katz, 334 N.J. Super. 473, 481 (Law Div. 2000). The complaint is dismissed if the acquiring entity fails to comply with the prelitigation requirements. Ibid.

The statute does not define bona fide negotiations, but our Supreme Court established such negotiations include an offer in writing setting forth the property interest to be acquired, the compensation to be paid, and a reasonable disclosure of how the amount was calculated. State by Comm'r of Transp. v. Carroll, 123 N.J. 308, 316-17 (1991). Bona fide negotiations are especially necessary for "minor" takings to protect unsophisticated owners who might not be in a position to hire lawyers or appraisers. See ibid. A one-price offer does

16

not, by definition, violate N.J.S.A. 20:3-6, so long as the condemnor puts forth its best offer—an offer for the full appraised value of the property—before litigation is instituted. Id. at 318-19; Casino, 334 N.J. Super. at 483.

The reasonableness of bona fide negotiations centers on the adequacy of the appraisal information and whether it sufficiently explains the valuation method for an average property owner to engage in negotiations. Carroll, 123 N.J. at 321. A one-price offer procedure is acceptable so long as the appraisal information is comprehensible and includes a valuation methodology. See id. at 323. Just compensation is based on the property owner's loss, not the condemning authority's gain. Casino, 334 N.J. Super. at 484. Just compensation is the difference between the value of the property before and after the taking. Harvey Cedars, 214 N.J. at 417.

Defendants argue that the negotiations failed to account for the fact that DEP was converting their fee simple ownership of the commercial beaches to a seasonal limited-used property with no transferable title. We disagree with defendants' characterization. Even though DEP has the right to operate the beach if defendants fail to do so, this does not create a seasonal limited-use property with no transferable title. As the judge noted, any successor in interest will have the same rights as defendants to operate a commercial beach.

Defendants cite a tax map of the area and a diagram of the property as examples of DEP's failure to engage in bona fide negotiations, and request that this court compare these two documents. However, contrary to defendants' assertions, DEP engaged in lengthy discussions with defense counsel about the easement language. On notice to defendants, Moliver appraised the properties, inspecting the properties with defendants present. He provided defendants with a detailed explanation of his appraisal methodology. DEP engaged in numerous communications with defendants, spanning multiple years, wherein they made several concessions to defendants in an effort to reach a resolution and answered inquiries in a timely manner. DEP ultimately submitted a written offer to defendants.

Defendants argue that the appraiser did not consider Risden's and Bradshaw's income from beach badge sales and that income is exactly what DEP sought to take, and therefore should be included in the valuation.

The record establishes that DEP engaged in bona fide negotiations inasmuch as the property was appraised, DEP made an offer for just compensation, and DEP and defendants engaged in discussions in an attempt to satisfy their concerns. We find DEP engaged in bona fide negotiations.

IV.

A-2278-17T4

Defendants argue that N.J.S.A. 12:3-64 does not authorize DEP to take easements for public use and access of defendants' privately owned commercial beaches. Defendants contend that neither this statute nor the EDA addresses public beach access, nor do they authorize the taking of easements.

We addressed these arguments in North Beach, 451 N.J. Super. at 230-32, 237. We reiterate that N.J.S.A. 12:3-64 supports DEP's authority to take the easements. The judge addressed these arguments in her opinion leading to North Beach and determined that N.J.S.A. 12:3-64 provides no impediments to the takings. Id. at 226-28. We rely on North Beach and add the following.

DEP has the power to condemn pursuant to the EDA. See, e.g., N.J.S.A. 12:3-64. The Legislature enacted the EDA to integrate and standardize the more than 300 statutes authorizing the exercise of eminent domain. Township of West Windsor v. Nierenberg, 150 N.J. 111, 126 (1997). The EDA is not an enabling statute, but rather, provides a uniform procedure to be followed by all entities with the power to condemn. Township of Hillsborough v. Robertson, 260 N.J. Super. 37, 43 (Law Div. 1992).

N.J.S.A. 12:3-64 provides:

> The Department of Conservation and Economic Development may acquire title, in fee simple, in the name of the State, by gift, devise or purchase or by condemnation in the manner provided in chapter one of [the EDA] to any lands in the State, including riparian lands, of such area and extent which, in the

> discretion of the department, may be deemed necessary and advisable. All lands so acquired shall be subject to the jurisdiction and control of the department.
>
> . . . .
>
> Upon the department exercising the right of condemnation and entering upon and taking land in advance of making compensation therefor it shall proceed to have the compensation fixed and paid to the owner, as provided in said chapter one of the [EDA].
>
> Lands thus acquired shall be used for the improvement or development of any waterway, stream, river or creek or any waterfront or oceanfront property or to give access to any lands of the State.
>
> [(Emphasis added).]

This court in North Beach held that N.J.S.A. 12:3-64 expressly authorizes DEP to condemn properties for shore protection and to acquire "any type of property interest," including a perpetual easement to protect the coastline. 451 N.J. Super. at 237-38. Because DEP could have taken the property in fee simple, it also had discretion to take a lesser interest, such as an easement with a right of public access and use. Id. at 234-35.

Defendants argue that the public trust doctrine does not support an interpretation of N.J.S.A. 12:3-64 to take the easements. In North Beach, we cited Matthews v. Bay Head Improvement Ass'n, 95 N.J. 306, 322 (1984), for the notion that the public trust doctrine requires public access to the shoreline.

451 N.J. Super. at 239-41. North Beach held that the public trust doctrine requires the public have access to the beach when DEP uses public funds to create a dry sand area. Id. at 241.

According to the public trust doctrine, the State holds "'ownership, dominion and sovereignty' over tidally flowed lands 'in trust for the people.'" Hackensack Riverkeeper, Inc. v. N.J. Dep't of Envtl. Prot., 443 N.J. Super. 293, 303 (App. Div. 2015) (quoting City of Long Branch v. Jui Yung Liu, 203 N.J. 464, 474 (2010)). Access to the sea encompasses "access to and use of privately[]owned dry sand areas as reasonably necessary." Id. at 304 (quoting Matthews, 95 N.J. at 326). We agree with the judge that the public trust doctrine requires that the public be assured access to the beaches.

Defendants argue that the New Jersey Supreme Court has never compelled a private property owner to provide public use and access to the beach when adequate public access exists. But here, federal funding for the Project is conditioned on DEP providing and ensuring public access to the waterfront, thus DEP must acquire the right to provide public access to the beaches. Without this language in the easement, defendants could eventually prevent public access to the waterfront.

Defendants dispute this court's determination in North Beach that N.J.S.A. 12:3-64 permits the condemning authority to acquire any interest in

the property it condemns. 451 N.J. Super. at 232. According to defendants, the EDA is not subject to interpretation, and DEP only has the power delegated by the Legislature. But in North Beach, this court stated that DEP instead derives its power to condemn from N.J.S.A. 12:3-64, and that statute permits DEP to acquire any interest in the property it condemns. In support, this court quoted N.J.S.A. 20:3-20 which provides.

> The title to property condemned and acquired by the condemnor hereunder, shall be a title in fee simple, free and discharged of all right, title, interest and liens of all condemnees, and shall include all the right, title and interest of each condemnee therein, provided, however, that <u>if the complaint or any amendment thereof shall specify a lesser title, the lesser title so specified shall be the title condemned and acquired.</u>
>
> [Id. at 233 (emphasis added).]

Thus, we agree with the holding in North Beach that N.J.S.A. 12:3-64 permits DEP to take easements on private property for shore protection.

Affirmed in part; reversed in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION