75 N.J. Super. 100 (1962)
182 A.2d 369
THE WAYNE COMPANY, INC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
NEWO, INC., A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 11, 1962.
Decided June 15, 1962.
*102 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Edward R. McGlynn argued the cause for appellant (Messrs. McGlynn, Stein & McGlynn, attorneys).
Mr. Michael J. Monaghan, Jr. argued the cause for respondent (Messrs. Monaghan & Monaghan, attorneys).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
This is an appeal by defendant lessee from an interlocutory order of the Chancery Division in which it was held that the trial of the condemnation action would be limited to the question of the leasehold damages it had suffered, plus the stipulated sum of prepaid rent. We granted leave to appeal in order to obviate the necessity of an extended trial of the parties' respective contentions, by resolving just what elements of damage might properly be considered at the ultimate hearing.
Plaintiff is the owner of real property located on the west side of State Highway No. 4 in Fort Lee, Bergen County. In 1954 negotiations between the parties resulted in the execution of a lease on October 18 of that year. The lease was for an initial 15-year term, and was to begin upon plaintiff's completion of a restaurant building to be used by defendant. The building was completed on or about August 1, 1955. Meanwhile, on June 1, 1955, defendant subleased to the Kened Company, plaintiff consenting thereto in writing.
*103 Early in 1960 the New Jersey State Highway Department notified both plaintiff and defendant that the land and improvements in question would be taken by the State as part of its road program involving the building of new approaches in connection with the double-decking of the George Washington Bridge. On February 17, 1961 the Department instituted a condemnation action naming both plaintiff and defendant as parties. Immediate possession was sought, with the result that the premises were surrendered, the State accepting possession of the land and building on March 23, 1961.
Thereafter the Bergen County Law Division judge on April 14, 1961 appointed commissioners to hear the condemnation and to report by July 14 following. In the meantime the State Highway Department sought to effect a settlement. Such agreement was reached while the condemnation action was pending. The Department agreed to pay plaintiff $160,000 for the land and improvements taken and for the damage caused to its remaining vacant land. No further steps were taken in the condemnation action. We are informed that the State has issued its check, payable to plaintiff, which is being held by the State's closing agent pending the obtaining of a release from defendant tenant.
Since the parties were in dispute as to the distribution of the $160,000, it was agreed that an action be instituted on the basis of N.J.S.A. 20:1-15. That statute deals with a situation where a condemning authority has paid into court the amount involved. However, neither party raised any question as to the jurisdiction of the Chancery Division to determine the dispute between them.
Plaintiff, by its complaint in the Chancery Division, sought judgment requiring defendant to deliver a release of the lease. Defendant, by its amended answer, claimed that under section 16(c) of its lease, hereinafter set forth, it was entitled to an apportionment of the $160,000, comprising four items totalling $127,632.55, as follows:

*104 "(1) Rent prepaid by the Kened Company, $38.557.31.
(2) The market value of the unexpired term of the leasehold, from March 23, 1961 to August 1, 1970, $35,000.
(3) The depreciated value of the fixtures, less salvage, $19,075.24.
(4) Loss of profits for the remainder of the term, $35,000."
Plaintiff concedes its obligation to pay defendant the prepaid rent, and that defendant should be permitted to offer proof on the question of leasehold damage suffered.
Upon pretrial of the matter, it was agreed that the Chancery Division judge would determine the purely legal question arising out of paragraph 16 of the lease insofar as defendant's claims for the depreciated value of its fixtures and loss of profits were concerned. The trial court, in its written opinion, held that paragraph 16 did not entitle defendant to prove either of these items, and that the plenary trial would be limited to the question of its leasehold damages which, if established, would, together with the stipulated sum of prepaid rent, represent defendant's interest in the $160,000 condemnation settlement. An accordant interlocutory order was entered, and this appeal followed.
Defendant recognizes that in a "conventional dispute" between a landlord and tenant concerning their respective interests in a strict condemnation award, the settled rule is that the tenant's recoverable damage, if any, is ascertained and determined fundamentally by a comparison of the fair value of his leasehold interest and the rent reserved. N.J. Highway Authority v. J. & F. Holding Co., 40 N.J. Super. 309 (App. Div. 1956); Newark v. Cook, 99 N.J. Eq. 527 (Ch. 1926), affirmed on opinion, 100 N.J. Eq. 581 (E. & A. 1927). However, it contends that the general rule does not apply in this case because the parties in their lease contractually provided otherwise. The suggestion is advanced that in applying the general rule of apportionment between landlord and tenant, the Chancery Division judge disregarded the parties' contractual undertaking. Such is not the case, for the opinion he filed clearly shows that he based his decision on the language of paragraph 16.
*105 That paragraph provides:
"If the entire demised premises shall be taken or appropriated by virtue of eminent domain or be condemned for any public or quasi-public use, this lease shall terminate ipso-facto, but such a termination shall not affect the Lessee's right to recover the apportionment of damages herein provided. * * *
The Lessee assigns to the Lessor all damages recoverable by the Lessee from the public or private body (herein designated as the taking authority) on account of any taking, appropriation or injury of or to the whole or any part of the demised premises and waives the Lessee's right if any, to intervene as a party to any proceedings commenced by the Lessor to recover such damages, and in consideration thereof:
(a) The Lessor agrees not to settle any claim for such damages against the taking authority, without the written approval of the Lessee, which shall not unreasonably be withheld.
(b) The Lessor shall (unless the claim is settled as herein provided) prosecute proceedings for the recovery of such damages with due diligence and so as not to lose the benefit of the same. The Lessee may at its own expense designate an Attorney to act jointly with the Attorneys designated by the Lessor in the prosecution of said proceedings in the name and on behalf of the Lessor.
(c) All amounts which may be recovered by the Lessor for such damages from the taking authority (less any reasonable cost incurred by the Lessor for Attorneys and experts' fees in connection with the same) whether by settlement, litigation or otherwise shall be apportioned between the Lessor and the Lessee in proportion to their several interests and to the damages sustained by them, respectively. In ascertaining the Lessee's interest and the damage sustained by the Lessee the term of this lease shall be deemed to run for the full remainder of the term specified herein, notwithstanding any prior termination thereof which may result as provided herein in case of a taking or appropriation. Any apportionment due to the Lessee shall be paid promptly to it by the Lessor." (Italics ours)
Paragraph 16 must, of course, be read as a whole and, if possible, so interpreted as to give effect to its general purpose. 4 Williston on Contracts (3d ed., Jaeger), § 618(3), pp. 710 et seq.
It will be seen that the parties clearly contemplated the possibility of condemnation, and contracted with respect thereto. Under paragraph 16 the lease was to terminate in the event of condemnation, defendant's right to apportionment being preserved. Defendant lessee assigned to plaintiff *106 lessor "all damages recoverable by the Lessee" from the taking authority, and waived its right to intervene in any proceeding plaintiff might commence to recover "such damages." In consideration thereof plaintiff agreed not to settle any claim for "such damages" without defendant's written approval; plaintiff was to prosecute proceedings for the recovery of "such damages" with due diligence; and all amounts which plaintiff might recover for "such damages" from the taking authority (less reasonable costs incurred), "whether by settlement, litigation or otherwise," were to be apportioned between the parties.
Strictly speaking, there are no "damages recoverable by the Lessee" from the taking authority. Although in some jurisdictions each of the interests in the land taken is separately evaluated and the respective holders of such interests separately compensated, see 69 A.L.R. 1263 (1930) and 166 A.L.R. 1211 (1947), New Jersey is one of the states where a lump sum payment is made for all the interests. Our condemnation act, R.S. 20:1-1 et seq., as amended, makes no provision for separate evaluation and compensation. This was recognized in the J. & F. Holding Co. case, above, 40 N.J. Super., at page 314.
Viewing paragraph 16 in the light of its evident purpose, and in a light most favorable to defendant, it provides for the assignment and subsequent apportionment of those damages recognized as "recoverable" by it from the taking authority  indirectly through plaintiff, its landlord. These are the only damages to which it is entitled under the lease, and it is this type of damage to which paragraph 16 refers throughout. The words "such damages," repeatedly mentioned in clauses (a), (b) and (c) of the quoted paragraph, relate back to the phrase used at the beginning: "all damages recoverable by the Lessee from the public or private body (herein designated as the taking authority) on account of any taking."
"Such" is a descriptive and relative word referring to the last antecedent. Black's Law Dictionary (4th ed. 1951); *107 Summerman v. Knowles, 33 N.J.L. 202, 205 (Sup. Ct. 1868). Since "such damages" are those which the lessee might recover from the taking authority indirectly through the landowner, defendant's damages are limited to its leasehold damages.
Our cases have without exception recognized that claims against the condemnation payment received by the landowner are limited to those based on the interest in the land. The apportionment may implicate the security claims of mortgagees and other lienors, tax claims, right of dower or of a life tenant, remainderman, contractual vendees or owners of other future interests and, as here, the demand of a lessee. N.J. Highway Authority v. J. & F. Holding Co., above, 40 N.J. Super., at page 315. Jahr, Law of Eminent Domain, § 124 et seq., pp. 177 et seq. (1953); and see, generally, the annotation in 3 A.L.R.2d 286 et seq. (1949).
Newark v. Cook, above, is recognized as setting forth the legal principles applicable in the field of dispute between a landlord and tenant regarding the apportionment of the amount paid in condemnation. The court there stated:
"* * * Are the tenants entitled to compensation for the loss of their business, profits, good-will, fixtures and cost of removal? The right to compensation for lands taken for public highways is purely statutory. * * * Loss of business, profits, good-will, fixtures and cost of removal and the like suffered by the tenants, obviously, are not lands or real estate, or rights or criterion fixed by the statute. * * *" (99 N.J. Eq., at pages 536-537)
And see the earlier case of Board of Chosen Freeholders of Hudson County v. Emmerich, 57 N.J. Eq. 535 (Ch. 1898), cited in Cook; N.J. Highway Authority v. J. & F. Holding Co., above, at page 316; cf. American Salvage Co. v. Newark Housing Authority, 14 N.J. 271, 280 (1954).
Paragraph 16 assured defendant of its right to assert leasehold damages against plaintiff in the event of a condemnation, even though the lease, by its terms, was at an end. In determining the leasehold damages, the lease was to be deemed to run for the full remainder of the term. *108 Paragraph 16 says nothing about depreciated value of the fixtures or loss of profits. As the Chancery Division judge observed, if defendant wished to avail itself of a different measure of damages  and therefore a larger share of the $160,000  it could have provided specifically in the lease that in case of condemnation it would be entitled to claim damages for its loss of business, profits, fixtures and good will from the condemnation award. Paragraph 16 plainly insured that defendant could attempt to show leasehold damages, the value of its leasehold to be determined in accordance with the balance of the term remaining at the time of the taking.
Accordingly, we hold that the rights of the parties are governed by the terms of the lease; the lease limits the apportionment due defendant to "all damages recoverable by the Lessee" from the taking authority, which damages are assigned to the landlord, later to be apportioned; and such damages are limited to leasehold damages, i.e., the difference between the fair value of the leasehold interest and the rent reserved.
The order under appeal is affirmed.