208 N.J. Super. 53 (1986)
504 A.2d 1207
JERSEY CITY REDEVELOPMENT AGENCY, A BODY CORPORATE AND POLITIC OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
EXXON CORPORATION, A NEW JERSEY CORPORATION, ET AL., DEFENDANTS-RESPONDENTS, AND RAMON RODRIGUEZ, T/A MONTGOMERY STREET EXXON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 13, 1986.
Decided February 7, 1986.
*54 Before Judges FURMAN, COHEN and ASHBEY.
Joseph B. Brown argued the cause for defendant-appellant (Sobel & Lyon, attorneys; Lois D. Lyon on the brief).
John J. Curley argued the cause for plaintiff-respondent (Lepis, Lepis & Curley, attorneys; John J. Curley on the brief).
David J. Menzel argued the cause for defendant-respondent (Stryker, Tams & Dill, attorneys; David J. Menzel of counsel, Jonathan D. Clemente on the brief).
D. Michael Risinger filed an amicus curiae brief on behalf of New Jersey Gasoline Retailer's Association and Allied Trades, Inc.
The opinion of the court was delivered by RICHARD S. COHEN, J.A.D.
*55 Following a blight declaration, N.J.S.A. 40:55C-4; 40:55-21.1 et seq., plaintiff Jersey City Redevelopment Agency instituted this condemnation action to acquire a parcel of gasoline station property owned by defendant Exxon and occupied by Exxon's franchised dealer, defendant Rodriguez. N.J.S.A. 20:3-1 et seq. Defendants filed cross-claims raising the question whether Rodriguez was entitled to a share of the compensation award. Plaintiff and Exxon agreed the property was worth $60,000 and sought to terminate the litigation with payment of that amount to Exxon. Rodriguez took two opposing positions. The first was that he was entitled to a portion of the $60,000. The second was that, in addition to the award of compensation in the case, there should have been an additional award of the value of his lost franchised business.
The trial court ruled that the condemnation commissioners should not evaluate the good will and business opportunity which Rodriguez said he lost; that Rodriguez should not receive any part of the fee award for his loss of good will and business opportunity, and that Rodriguez could receive only the loss of his leasehold, whose value would be fixed in an allocation proceeding. The court also ruled that Rodgriguez's claim for loss of his leasehold was not barred by his contractual arrangements with Exxon. Rodriguez made a motion for leave to appeal to this court, which was denied. The condemnation commissioners then determined the value of the property to be $60,000. N.J.S.A. 20:3-12. Rodriguez appealed the award to the Law Division, N.J.S.A. 20:3-13, and sought an allocation hearing. At Rodriguez's instance, the Law Division then entered an order for final judgment which recited that no party objected to the amount of the $60,000 award, that the parties agreed that the award would be allocated to Exxon in accordance with the earlier order of the court, and that Rodriguez wanted to appeal from that earlier order. Rodriguez appealed to this court. We permitted amicus curiae to file a brief.
*56 The facts are not complex. The property is an Exxon gasoline station. Rodriguez bought the station business from a third party in 1971 or 1972 for $20,000.[1] A lease and a gasoline and motor fuels sales agreement constitute Rodriguez's franchise contract. They were most recently renewed in 1979 for an additional three years, with additional renewal rights. The franchise relationship is governed by the federal Petroleum Marketing Practices Act (PMPA), 15 U.S.C.A. § 2801 et seq., and, to the extent it does not conflict, our Franchise Practices Act (FPA), N.J.S.A. 56:10-1 et seq.
The sales agreement permits Exxon to terminate the franchise in the event of condemnation. That provision is authorized by PMPA. 15 U.S.C.A. § 2802(c)(5). The lease contains a provision to the same effect and further states:
Any and all payments made for or arising from any such taking or for damages to the premises resulting therefrom shall belong and be payable entirely to Exxon, except as otherwise required by law.
Plaintiff, the condemning authority, takes the position that it is obliged to pay for the value of the real estate it took but not to compensate Rodriguez for loss of his franchise, his business opportunity or his good will. Exxon says the $60,000 award was for real estate value alone; thus, to transfer any of that sum to Rodriguez would be to deprive Exxon of fair payment for the taking of its property. Rodriguez argues that he is entitled to a share of the condemnation award, which includes the value of his business. If not, he further argues, he is entitled to a separate award from plaintiff for taking his business. Both he and amicus argue that unless New Jersey law makes provision for Rodriguez's loss, it violates his federal and state constitutional rights.
Rodriguez is not entitled to a share in Exxon's award on the thesis that the award included the value of his lost good will and business opportunity. Pursuant to existing New Jersey *57 law, the condemnation commissioners fulfilled their statutory function by determining the value of the property as a unit and without allocating value to owners of portions of the fee title. That value did not include Rodriguez's lost good will and business opportunity. To the extent that the value of property is fixed or influenced by its usability for profitable purposes, its past profitable use is relevant. But, the profits lost in a taking do not thereby become compensable. Rather, the use is an element to consider in fixing the value of the property itself. See State v. Gallant, 42 N.J. 583, 587 (1964); State, Comm'r of Transp. v. Cooper Alloy Corp., 136 N.J. Super. 560, 568 (App. Div. 1975); State v. Williams, 65 N.J. Super. 518, 524-526 (App. Div. 1961). Trenton v. Lenzner, 16 N.J. 465 (1954), cert. den. 348 U.S. 972, 75 S.Ct. 534, 99 L.Ed. 757 (1955), is not to the contrary. There, the City took defendant's commercial parking yard in order to establish a public parking operation. It acquired defendant's business: it did not just displace it. See United States ex rel. T.V.A. v. Powelson, 319 U.S. 266, 281-283, 63 S.Ct. 1047, 1056, 87 L.Ed. 1390 (1943). Even so, Lenzner relies on legal principles consonant with our views. See also Kimball Laundry Co. v. United States, 338 U.S. 1, 69 S.Ct. 1434, 93 L.Ed. 1765 (1949).
In the absence of contractual waiver, a tenant is entitled to an allocation of the value of its leasehold from the award of the value of the fee. See Wayne Co., Inc. v. Newo, Inc., 75 N.J. Super. 100 (App.Div. 1962). Here, however, Rodriguez clearly waived such an allocation. Neither PMPA nor FPA prohibits such waivers. They are commercially common and normally enforceable. See N.J. Sports & Exposition Authority v. East Rutherford, 137 N.J. Super. 271, 279 (Law Div. 1975); N.J. Highway Authority v. J & F Holding Co., 40 N.J. Super. 309, 314 (App.Div. 1956). We see no reason why the waiver *58 should not be enforced in this case.[2] In any event, the value of the leasehold as traditionally fixed would be disappearingly small.[3]
Rodriguez argues that PMPA requires that a portion of Exxon's award be paid to him for his loss of business opportunity and good will. He points to a provision of PMPA governing termination of a franchise due to an eminent domain taking. It says:
... the franchisor shall fairly apportion between the franchisor and the franchisee compensation, if any, received by the franchisor based upon any loss of business opportunity or good will. [15 U.S.C.A. § 2802(d)(1)].
Because fair property value takes into account the use of the property, Rodriguez argues, Exxon's award includes his losses. That is not so. Fair market value is fixed with a view to the use of the property in order properly to measure its value and thus compensate the owners of the fee or a portion thereof. Moreover, PMPA does not require an award based on any loss of business opportunity or good will. It dictates an apportionment of such compensation only if included in the award. The Congress was aware that state laws varied widely on the subject, as they still do. Annot., 81 A.L.R.3d 198 (1977). There was no intention for PMPA to supersede state law on the subject. See 1978 U.S. Code Cong. and Admin. News, 873, 896-897. Similarly, PMPA does not supersede the lease waiver, again because PMPA does not require augmentation of the *59 condemnation award by loss-of-business damages but rather deals only with allocation where such damages are awarded.
Rodriguez is not entitled to a separate award for his loss of good will and business. Rodriguez and the amicus invite us to read "property" in the Eminent Domain Act of 1971, N.J.S.A. 20:3-1 et seq., to include franchise contract rights, especially when tied so closely to the real estate as in the case of a gas station. The invitation is a tempting one, in view of Rodriguez's situation, but such a reading would fly in the face of the contrary definition of property in N.J.S.A. 20:3-2(d), which solely concerns land, "or any interest in land," and physical improvements, fixtures, accessories, etc. Against the long historical background, we can not define a franchise which includes a lease as an interest in land or as "an article" affixed to the property or specially adapted therefor.
Arguments are made that the body of state law barring compensation for good will and business losses was ill-considered at its inception, and that it deprives Rodriguez of substantive due process and equal protection.[4] We are bound by the rulings of the New Jersey Supreme Court, and arguments that they are wrong or create constitutional violations should be made there.
In support of the judgment below, it has been argued that Rodriguez must first exhaust his remedy under N.J.S.A. 20:4-4(c) for loss of earnings before seeking condemnation damages. We cannot tell from the record if he sought and obtained those limited statutory benefits. In any event, in view of our disposition of Rodriguez's other arguments, we need not deal with the issue. See also 42 U.S.C.A. § 4622(c).
Affirmed.
NOTES
[1] It is not revealed how much of the price was for inventory and movable equipment.
[2] The trial court's ruling that Rodriguez could seek a portion of the fee value in an allocation hearing was wrong because contrary to the enforceable waiver. The matter is not before us, however, on this appeal.
[3] The lease contains mechanisms designed to permit periodic rent increases by agreement or, in default thereof, by formula based on independent appraisal. Since the value to the tenant of the leasehold is traditionally fixed at the difference between the economic rent for the premises and the rent reserved, Wayne Co., Inc. v. Newo, Inc., 75 N.J. Super. at 104; N.J. Highway Authority v. J & F Holding Co., 40 N.J. Super. at 316, the rent increase mechanisms tend to reduce the value of the leasehold substantially.
[4] For a clear exposition of the views of counsel for the amicus curiae, see Risinger, "Direct Damages: the Lost key to Constitutional Just Compensation When Business Premises are Condemned," 15 Seton Hall L.Rev. 483 (1985).