**BARCLAYS BANK P.C., NEW YORK BRANCH, Plaintiff,**

v.

**865 CENTENNIAL AVENUE ASSOCIATES LIMITED PARTNERSHIP, a New Jersey limited partnership and Mazda Motor of America, Inc., a California corporation, Defendants.**

**MAZDA MOTOR OF AMERICA, INC., Counterclaimant,**

v.

**BARCLAYS BANK P.C., NEW YORK BRANCH, Counterclaim–Defendant.**

**No. 96–5747 (JAG).**

United States District Court, D. New Jersey.

June 23, 1998.

Order Denying Reargument, Aug. 3, 1998.

---

A. Dennis Terrell, Shanley & Fisher, P.C., Morristown, NJ, for Barclays Bank PLC, New York Branch.

Paul H. Schafhauser, Berger & Bornstein, Morristown, NJ, for 865 Centennial Ave. Associates Ltd. Partnership.

Peter Michael Burke, Cooper, Rose & English, Summit, NJ, for Mazda Motor of America, Inc.

## OPINION

GREENAWAY, District Judge.

This matter comes before the Court on the motion for partial summary judgment of Cooper, Rose & English, LLP, counsel for defendant/counterclaimant Mazda Motor of America, Inc. ("Mazda"). The other motion before the Court is the cross-motion for summary judgment of Berger & Bornstein, P.A., counsel for defendant/cross-claimant 865 Centennial Avenue Associates Limited Partnership ("865 Centennial").

### FACTS

The following facts are undisputed. 865 Centennial is the owner or former owner of a certain industrial building and premises lo-cated at 865 Centennial Avenue, Piscataway, New Jersey (the "Site"). The Site consists of a 49,450 square foot industrial building on a lot of approximately 10.006 acres. On August 15, 1988, 865 Centennial as landlord and Mazda as tenant entered into a written lease (the "Lease"). The lease agreement provided that Mazda would lease the industrial building and 5.00 acres of the 10.006 acre parcel (the "Leased Premises") for ten years until October 31, 1998. The Lease called for monthly rent payments of $45,833.33 and additional rent payments representing 100 percent of the taxes on improvements and 50 percent of the property taxes.

### Foreclosure Action

Plaintiff Barclays Bank P.C., New York Branch ("Barclays") is the mortgagee of the Leased Premises. In August 1989, Barclays and 865 Centennial entered into a financing arrangement pursuant to which 865 Centennial assigned all rights and interest in the Lease to Barclays (the "Assignment"). On February 17, 1994, Barclays declared 865 Centennial in default of its obligations under the financing. Consequently, Barclays informed Mazda of 865 Centennial's default and demanded, pursuant to the Assignment, that Mazda pay all future rents directly to Barclays. Shortly thereafter, Barclays commenced a foreclosure action against 865 Centennial which resulted in a final judgment of foreclosure which the Superior Court entered on January 16, 1996. In December 1996, the Superior Court appointed Barclays mortgagee-in-possession of the Leased Premises.

### Termination of the Lease

On June 20, 1995, the New Jersey Commissioner of Transportation filed a Declaration of Taking seeking 24.6 percent of the Leased Premises. Section 12(b) of the Lease provides that:

> If twenty (20%) percent or more of the Land or Building [is] involved in the taking, then, as a result of any such event, Tenant may elect, at its option, to terminate the Lease by giving notice to Landlord within sixty (60) days after the date of vesting of title as a result of the taking.

On August 11, 1995, Mazda sent a letter to Barclays and 865 Centennial [1] which stated in relevant part:

> This letter is intended to provide the Landlord with notice of Mazda's intent to terminate the Lease pursuant to its rights under Section 12(b) of the Lease. At this point in time, Mazda is actively pursuing other potential sites and it is Mazda's current projection that it will be vacating the Premises sometime during the first quarter of 1996. However, we will of course keep you advised of our plans as they develop and anticipate being able to provide the landlord with no less than thirty (30) days notice of the actual date that Mazda will vacate the Premises.

(Burke Aff., Ex. A).[2]

On August 16, 1995, Mr. Berger, the principal of 865 Centennial, forwarded Mazda's letter to George Ritter, 865 Centennial's land planner, adding:

> Enclosed please find a letter from Mazda terminating their lease, which they have a right to do if 20% of the land area is taken.

(Burke Aff., Ex. C).

On September 22, 1995, Mr. Berger advised Mazda that its attempted termination was invalid, or alternatively that if Mazda maintained that its termination was valid, it would be a holdover tenant by virtue of its continued possession of the Leased Premises. The letter stated in relevant part:

> Pursuant to the terms of the Lease, if your right to terminate arose as a result of the condemnation proceedings ... Mazda must make the election to terminate the Lease, in which event the Lease is over as of the date of the taking and Mazda must move out. ... Accordingly, as Mazda has not vacated the premises after its proported [sic] termination of the Lease on August 11, 1995, we hereby declare that Mazda has waived its right of termination as a result of its actions in remaining in possession.
>
> .Alternatively, if Mazda persists in maintaining the validity of its termination, which by the terms of the Lease was effective as of the date of the taking, your company would be a holdover tenant at the property. Accordingly, ... Landlord hereby elects to terminate your tenancy and hereby demands possession of the subject premises by the end of the day on October 31, 1995. ...

(Berger Cert., Ex. C).[3]

On September 25, 1995, Sandra Marshall, Mazda's in-house counsel, wrote to counsel for Barclays advising that Mr. Berger's position was without merit and unsupported by the language of the Lease. On October 11,

---

1. Due to the ongoing foreclosure proceeding, Mazda was not sure whether 865 Centennial still had a continuing interest in the Leased Premises or whether Barclays was for all intents and purposes Mazda's landlord so it addressed correspondence to both.

2. Both Mazda and 865 Centennial were aware by January, 1994, of the possibility of a taking. Sometime in 1994, 865 Centennial informed the State of New Jersey that if it condemned 20 percent or more of the Site, Mazda might terminate the Lease. Furthermore, in March, 1994, Lawrence Berger, the principal of 865 Centennial, wrote letters to Senators John A. Lynch and Jack Sinagra and Assemblymen Robert G. Smith and Jeffrey Warsh stating that "NEW JERSEY IS ABOUT TO LOSE MAZDA!" as a result of the State's eminent domain action. (Burke Aff., Ex. E).

When Mazda learned in January 1994 of the possibility of a taking it made a tentative decision then to terminate the Lease in the event of a taking. In June, 1994, Mazda's facilities manag-

er, Robert Belzer told Mazda's Chief Financial Officer, Jeff Badrtalei, that it would take a minimum of six months to relocate in the event of termination. By January, 1995, Mazda knew that the taking would exceed 20 percent. However, Mr. Badrtalei did not instruct Mr. Belzer to begin looking for alternate facilities until after the State filed a Declaration of Taking in June 1995. At that point, Mr. Badrtalei told Mr. Belzer that Mazda needed to relocate as soon as possible.

3. 865 Centennial asserted in footnotes 8 and 10 of its brief in support of its motion for summary judgment that if Mazda's termination was valid, Mazda was a holdover tenant from November 1, 1995 through the date that it vacated the premises. 865 Centennial argues that in such event it is entitled to double rent for that period. However, 865 Centennial's submissions do not reflect a claim for double rent—e.g., the pleadings, notice of motion and its proposed order for summary judgment. Accordingly, since 865 Centennial has not properly pled a claim for double rent, this claim is dismissed.

1995, Ms. Marshall advised Mr. Berger of the same.

In December 1995, Mazda and Barclays discussed the possibility of Mazda not relocating the training center portion of the Leased Premises.[4] On December 20, 1995, Mazda confirmed to Barclays that "it is mutually understood that Mazda will continue to utilize the approximately 12,000 square foot Service Training portion" of the Site.[5] (Schafhauser Cert., Ex. D). In this letter Mazda set forth its terms for a proposed new lease. Mazda would lease 12,000 square feet in the industrial building for an initial term of five years. On January 3, 1996, before Barclays replied to Mazda's proposed terms, Mazda notified Barclays that it was no longer interested in having the training center remain on the Site.

On January 16, 1996, Mazda informed Barclays and 865 Centennial that it would vacate its administrative offices on or about January 19, 1996 and would vacate the remaining areas by late March or April 1996. Mazda vacated the administrative office portion of the Leased Premises on January 19, 1996. On March 14, 1996, Mazda notified Barclays and 865 Centennial that it would completely vacate the Leased Premises by April 15, 1996 which it did.[6] Mazda has not made any rent payments as of February 1, 1996.

### The Parking Lot

In 1992, Mazda constructed an additional thirty-six (36) space parking lot on the Leased Premises, costing Mazda $130,000. When Mazda constructed the lot, it had 76 months remaining on its Lease over which Mazda intended to use the lot and amortize its cost. However, the lot was completely destroyed by the State's taking in June 1995.

Mazda seeks reimbursement for the unamortized cost of constructing the parking lot. The parties agree that the unamortized expense for construction of the parking lot is $71,000.

### The Instant Action

Barclays commenced the instant action as the assignee of the Lease to collect rent and tax monies allegedly due for the balance of the Lease term. Barclays contends that Mazda's August 11, 1995 letter does not constitute notice of termination of the Lease. In the alternative, Barclays argues that even if the notice was proper, Mazda waived its rights to terminate the Lease by remaining in possession of the Leased Premises until April 1996.

865 Centennial filed a cross-claim against Mazda contending that it has a continuing interest in the Leased Premises and essentially asserting the same claims as Barclays against Mazda. Mazda filed a counterclaim against Barclays and a cross-claim against 865 Centennial seeking (1) a pro rata rent abatement from the date of taking for the portion of the Leased Premises affected by the taking; and (2) reimbursement of the unamortized cost of constructing the parking lot.

Pursuant to a settlement agreement, in December, 1997, Barclays assigned to 865 Centennial all of its "right, title and interest" in the present action against Mazda. (Burke Aff., Ex. BB).

Mazda has moved for partial summary judgment seeking (1) dismissal of the complaint and 865 Centennial's cross-claim; and (2) reimbursement for the unamortized cost of constructing the parking lot.[7] 865 Centen-

---

4. The facility to which Mazda had planned to move the training center turned out to be too small.

5. Even though Mazda contemplated leasing space for the training center from Barclays, it never contemplated entering into a new lease with 865 Centennial or Mr. Berger. In the December 20, 1995 letter, Mazda added that "[s]hould 865 Centennial Ave. Associates/USLR, et al. hold an interest in the property, Mazda WILL NOT occupy the facility."

6. Mazda vacated the premises on April 15, 1996 but did not turn over the keys until August, 1996.

On April 17, 1996, 865 Centennial sent Mazda a list of repairs which needed to be made. 865 Centennial instructed Mazda to handle the repairs even though Mazda offered to write a check to cover the cost of the repairs ($5,976) instead. Mazda retained the keys so that its contractors could access the Leased Premises. Mazda completed the repairs and returned the keys in August, 1996. Mazda did not occupy the Leased Premises after April 15, 1996.

7. Mazda did not move for summary judgment on its claims for a pro rata rent abatement.

nial filed a cross-motion for summary judgment seeking an order (1) declaring that the termination of the Lease was invalid and is of no force and effect; (2) dismissing Mazda's counterclaim and cross-claim for a pro rata rent abatement and for reimbursement for the unamortized cost of the parking lot; and (3) dismissing Barclays as a party.

## DISCUSSION

### Summary Judgment

Fed.R.Civ.P. 56(c) provides for summary judgment when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Orson, Inc. v. Miramax Film Corp.,* 79 F.3d 1358, 1366 (3d Cir.1996). Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Township,* 772 F.2d 1103, 1109 (3d Cir.1985). The party opposing the motion for summary judgment cannot rest on mere allegations and must instead present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 243, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Siegel Transfer, Inc. v. Carrier Express, Inc.,* 54 F.3d 1125, 1130–31 (3d Cir.1995); *Sound Ship Bldg. Corp. v. Bethlehem Steel Co.,* 533 F.2d 96, 99 (3d Cir.1976). In determining whether there are any issues of material fact, the court must resolve all reasonable doubts as to the existence of a material fact against the moving party. *Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 874 (3d Cir.1972).

### Termination of the Lease

■ Mazda seeks partial summary judgment dismissing the complaint and 865 Centennial's cross-claim. The construction of the terms of a written lease is a matter of law for the courts. *Crewe Corp. v. Feiler,* 49 N.J.Super. 532, 541, 140 A.2d 411 (App.Div.), *rev'd on other grounds,* 28 N.J. 316, 146 A.2d 458 (1958).

■ Courts are required to give plain meaning to contract terms. *Kaufman v. Provident Life and Cas. Ins.,* 828 F.Supp. 275, 283 (D.N.J.1992), *aff'd,* 993 F.2d 877 (3d Cir.1993); *see also Kampf v. Franklin Life Ins. Co.,* 33 N.J. 36, 43, 161 A.2d 717 (1960) (where language of contract is clear, courts must interpret it according to its plain meaning). When enforcing lease agreements, courts may not write a different or better contract for the parties. *Liqui–Box Corp. v. Estate of Elkman,* 238 N.J.Super. 588, 600, 570 A.2d 472 (App.Div.1990) (citations omitted). Furthermore, where there is no ambiguity in the contract, courts may not look beyond the language employed by the parties. *New Wrinkle, Inc. v. John L. Armitage & Co.,* 238 F.2d 753, 757 (3d Cir.1956).

■ The issue before the Court is whether Mazda's August 11, 1995 letter constituted proper notice of termination. The Court has to look no further than the language of the Lease and Mazda's letter to determine that Mazda validly terminated the Lease.

The language of the Lease is clear and unambiguous. The Lease grants Mazda the option to terminate if 20 percent or more of the Leased Premises are involved in a taking. To exercise this option, Mazda had to give notice of termination within 60 days of the taking. The State declared a taking on June 20, 1995. Within 60 days, as mandated by Section 12(b) of the Lease, Mazda wrote to 865 Centennial to "provide [it] with notice of Mazda's intent to terminate the Lease." (Letter from Mazda to 865 Centennial and Barclays of 8/11/95). The notice advised that Mazda was actively looking for other sites. It also added that Mazda would vacate the Leased Premises during the first quarter of 1996.

865 Centennial asserts that this letter does not constitute notice of termination, but is merely a notice of intent to terminate. While the Court notes that it may have been preferable if Mazda had phrased its language to state that it was providing "notice of termination" instead of "notice of intent to terminate," it is clear from the rest of the letter and the parties' actions that Mazda terminated the Lease.

First, Mazda stated that it was actively pursuing relocation sites. Tenants do not actively search for alternate facilities unless they are moving. Second, Mazda stated that it would vacate the Leased Premises during the first quarter of 1996, which it did. Third, 865 Centennial and Barclays understood that Mazda had terminated the Lease. Mr. Berger, 865 Centennial's principal, sent a letter to the land planner within days of receiving Mazda's termination notice stating that he was enclosing "a letter from Mazda terminating their lease, which they have a right to do if 20% of the land area is taken." (Letter from Berger to Ritter of 8/16/95). Furthermore, Barclays contemplated entering into a lease with Mazda for 12,000 square feet, for a five year term. Barclays would not have considered entering into a new lease with Mazda if it did not believe that Mazda had terminated its Lease with 865 Centennial. In addition, the appraiser that Barclays had retained testified that Barclays' counsel, Shanley & Fisher, P.C., told him that the August 11, 1995 letter constituted proper termination notice. (Lasser Dep. at 20:15–21:10).

In the alternative, 865 Centennial argues that even if Mazda's termination notice was proper, Mazda waived its right to terminate the Lease or rescinded its termination by (1) not vacating the Leased Premises within a reasonable time; (2) continuing to pay rent in accordance with the Lease; (3) seeking an abatement of rent under the Lease; and/or (4) indicating subsequent to its termination that it wished to remain on the Site. The Court will address each of these arguments separately.

■ Waiver is "the intentional relinquishment of a known right." *Shebar v. Sanyo Business Sys. Corp.*, 111 N.J. 276, 291, 544 A.2d 377 (1988). It must be shown that the party charged with waiver knew of his or her legal rights and deliberately intended to relinquish them. *Id.; see also Petrillo v. Bachenberg*, 263 N.J.Super. 472, 480, 623 A.2d 272 (App.Div.1993), *aff'd*, 139 N.J. 472, 655 A.2d 1354 (1995). Thus, "[w]aiver must be evidenced by a clear, unequivocal and decisive act from which an intention to relinquish the right can be inferred." *Petrillo*, 263

N.J.Super. at 480, 623 A.2d 272. There is no evidence that Mazda waived its right to terminate the Lease.

■ 865 Centennial contends that even if Mazda's termination was proper, Mazda waived its right to terminate by not vacating the Leased Premises until April 1996. 865 Centennial directs the Court to its September 22, 1995 letter advising Mazda that its termination was invalid because it failed to move out as of the date of its termination notice. 865 Centennial has not provided the Court with any authority holding that a tenant must vacate the premises on the day it terminates the Lease. Furthermore, the Lease is silent with regard to when Mazda had to vacate the Leased Premises after providing notice of termination. It is not the Court's function to write the Lease for the parties or supply terms that have not been agreed upon. *See Schenck v. HJI Assocs.*, 295 N.J.Super. 445, 450, 685 A.2d 481 (App. Div.1996) (citing *Temple v. Clinton Trust Co.*, 1 N.J. 219, 225, 62 A.2d 690 (1948)). The Court cannot place on Mazda obligations not imposed by the Lease. *See Crewe Corp.*, 49 N.J.Super. at 543, 140 A.2d 411.

865 Centennial concedes that the Lease is silent as to when Mazda must vacate after providing notice of termination. Consequently, 865 Centennial argues that to terminate validly its obligations under the Lease, Mazda had to vacate the Leased Premises within a reasonable time after it terminated the Lease.

■ What constitutes "reasonable time" for a tenant to vacate the premises after providing notice of termination depends on the circumstances of each case. *Reste Realty Corp. v. Cooper*, 53 N.J. 444, 461, 251 A.2d 268 (1969). The practical inconvenience and difficulties of finding and moving to a new location must be considered. *Id.*

Upon providing notice of termination on August 11, 1995, Mazda searched for another location, conducted site surveys and site inspections, commenced negotiations of business terms, designed plans, negotiated a lease and coordinated telecommunication and management information. (Fatigati Aff. ¶ 7). John Fatigati, a commercial real estate bro-

ker and adjunct professor at New York University Graduate School of Real Estate, submitted sworn testimony stating that given the nature of the 49,500 square foot building from which Mazda had to relocate, Mazda found a new site and vacated the Leased Premises expeditiously. *Id.* ¶¶ 7–8. 865 Centennial has not submitted any evidence to dispute Mr. Fatigati's conclusion. Indeed, 865 Centennial admitted that it is a time consuming process for a tenant to survey available space, do design layouts, negotiate a Lease and then move. (Berger Dep. at 300:10–16). Based upon these considerations, the Court concludes that the time it took Mazda to vacate the premises was reasonable.

■ 865 Centennial argues that Mazda rescinded its termination by continuing to pay rent until it vacated the Leased Premises. The Court has not found any authority in support of this argument. 865 Centennial would have been outraged if Mazda had remained on the Leased Premises without paying rent. As long as Mazda remained on the Leased Premises, it had a duty to pay rent regardless of whether or not it terminated the Lease. The fact that Mazda continued to pay rent is not evidence that it rescinded its termination.

■ 865 Centennial also contends that Mazda waived its right to terminate the Lease by seeking a pro rata rent abatement from the date of the taking until it vacated the Leased Premises. 865 Centennial has not even attempted to explain to the Court how Mazda's assertion of a claim for abatement is evidence that it waived its right to terminate the Lease.

■ 865 Centennial claims that Mazda waived its right to terminate the Lease by contemplating entering into a new lease with Barclays for 12,000 square feet of the Leased Premises. The Court disagrees. Mazda considered entering into a new lease with new terms. Under the new lease, Mazda would have been leasing 12,000 square feet as opposed to 49,500 square feet; the dura-

tion of the new lease was for 5 years as opposed to 10 years; and Mazda would have had a new landlord, Barclays. (*See* Schafhauser Cert., Ex. D). Furthermore, if Mazda had not terminated its Lease with 865 Centennial, neither Mazda nor Barclays would have discussed entering into a new lease.

There are no genuine issues as to a material fact concerning Mazda's termination of the Lease. Accordingly, Mazda's motion for partial summary judgment dismissing the entire complaint and dismissing 865 Centennial's cross-claim [8] as a matter law is granted. 865 Centennial's cross-motion for summary judgment seeking an order declaring that Mazda's termination of the Lease was invalid is denied.

### Reimbursement of Unamortized Cost of Parking Lot

Mazda moved for summary judgment on its claim for reimbursement for the unamortized cost of the parking lot it constructed.

■ It is well-settled that condemnation procedures in New Jersey follow the "unit rule" which allows only one award to be made for all the separate interests in the property. *State v. Jan–Mar, Inc.,* 236 N.J.Super. 28, 32, 563 A.2d 1153 (App.Div. 1989); *New Jersey Highway Auth. v. J. & F. Holding Co.,* 40 N.J.Super. 309, 314–15, 123 A.2d 25 (App.Div.1956). However, those parties who hold an interest in the property as of the date of the taking may receive from that condemnation award a proper divisional share of indemnity for its particular loss. *Wayne Co. v. Newo, Inc.,* 75 N.J.Super. 100, 107, 182 A.2d 369 (App.Div.1962). Lessees who have an interest in the condemned property and who have not surrendered their claims to the lessor, are entitled to an allocation of the value of their property from the condemnation award. *Jersey City Redevelopment v. Exxon Corp.,* 208 N.J.Super. 53, 57, 504 A.2d 1207 (App.Div.1986); *Wayne,* 75 N.J.Super. at 105, 182 A.2d 369; *New Jersey Sports and Exposition Auth. v. Borough of E. Rutherford,* 137 N.J.Super. 271, 284–85,

---

**8.** As stated on p. 717 *supra,* 865 Centennial's cross-claim asserts the same claims against Maz- da as Barclays.

348 A.2d 825 (Law Div.1975). Termination of the lease does not prevent a tenant from recovering the value of his or her property in the absence of a contrary stipulation by the parties. *J. & F. Holding Co.*, 40 N.J.Super. at 315, 123 A.2d 25.

The issue before the Court is whether Mazda waived its right to reimbursement for the unamortized cost of constructing the parking lot. Section 11(d) of the Lease provides that:

> [A]ll alterations and improvements which are attached to the Building so as to be and become part of the realty shall become part of the premises subject to the terms and conditions of this Lease shall be and remain the property of the Landlord and be surrendered with the premises as part thereof, without compensation to Tenant therefor, at the expiration or sooner termination of the term of this Lease ...

865 Centennial argues that pursuant to section 11(d) of the Lease, upon a termination, the parking lot remains the property of the Landlord (865 Centennial) without compensation to the Tenant (Mazda).

■ 865 Centennial asserts that Mazda and 865 Centennial contemplated and rejected any provision entitling Mazda to a share of any condemnation proceeds. In support of its contention, 865 Centennial introduced the testimony of Charles Aster, Esq. Mr. Aster drafted and negotiated portions of the Lease on Mazda's behalf. He drafted and proposed inserting the following provision into the Lease:

> In the event this Lease is terminated, due to the condemnation of the Building or the Land pursuant to this paragraph 12, Landlord shall pay to Tenant Tenant's interest in the condemnation proceeds based on Tenant's leasehold interest in the leased premises.

This provision was never inserted into the Lease because 865 Centennial objected to it and Mr. Aster did not challenge the objection. (Aster Dep. at 29:1–30:4).

■ 865 Centennial contends that Mr. Aster's failure to contest its objection with regard to including such provision in the Lease is evidence of the parties' intent that Mazda not receive a share of a condemnation award in the event of a taking. However, the mere absence of a provision in the Lease entitling Mazda to an allocation of any condemnation award does not establish that Mazda waived its right to a portion of the condemnation proceeds. According to the case law, a tenant only waives the right to share in the condemnation proceeds if the lease contains a contractual provision whereby the tenant surrenders all proceeds arising from a taking to the landlord. *See Jersey City Redevelopment*, 208 N.J.Super. at 57, 504 A.2d 1207; *Wayne*, 75 N.J.Super. at 105, 182 A.2d 369. There is no such contractual provision in the Lease.

■ Furthermore, Section 11(d) of the Lease does not waive Mazda's right to share in the condemnation proceeds. Section 11(d) provides that alterations which are "attached to the Building" are to remain the property of 865 Centennial without compensation to Mazda. Pursuant to Section 1 of the Lease, the term "Building" refers to the approximately 50,000 square foot industrial building while the term "Land" refers to the five acres of property on which the Building is situated. The parking lot is attached to the Land, not the Building. Since section 11(d) does not apply in this case and Mazda did not waive its right to share in the condemnation proceeds, Mazda is entitled under the common law to reimbursement for the unamortized cost of the lot.[9]

There are no genuine issues of material fact as to reimbursement for the unamortized cost of constructing the parking lot. Accordingly, Mazda's motion for judgment as a matter of law on this issue is granted. 865 Centennial shall reimburse Mazda for the unamortized cost of constructing the parking lot—$71,000.

### *Abatement of Rent*

■ 865 Centennial has moved for judgment as a matter of law pursuant to Fed. R.Civ.P. 56, on Mazda's claim for a pro rata rent abatement from the date of taking. Mazda asserts that the issue of whether it is

---

9. The parties have agreed that the unamortized cost of the parking lot is $71,000.

entitled to a rent abatement under the terms of the Lease at any time after the taking creates an issue of fact which must be resolved at trial. (Mazda's Br. in Opp. to 865 Centennial's Motion, p. 12 n. 6). Mazda contends that the Court must discern the intent of the parties regarding Section 12(b) of the Lease. The Court disagrees with Mazda's contention. There are no genuine issues as to a material fact concerning the abatement of rent.

Section 12(b) of the Lease provides that:

If Tenant does not elect to terminate this Lease as aforesaid, or if this Lease is not terminated or terminable pursuant to the provisions of this Lease, landlord agrees that it will with all reasonable dispatch, at its expense, rebuild and restore the remaining portion of the premises ... There shall be a proportionate abatement of rent for the time and area for which such portion of the premises are unusable by Tenant.

As stated previously, where the language of a lease is clear, the Court must interpret it according to its plain meaning. *Kaufman,* 828 F.Supp. at 283; *Kampf,* 33 N.J. at 43, 161 A.2d 717. The language of section 12(b) is clear. The Lease provides for an abatement of rent only in the event that Mazda elected not to terminate and 865 Centennial's subsequent restoration of the Leased Premises rendered certain portions unusable. There is no ambiguity in section 12(b); therefore, the Court may not look beyond the language employed by the parties. *See New Wrinkle,* 238 F.2d at 753. Since Mazda terminated the Lease it is not entitled to an abatement of rent.[10] Accordingly, 865 Centennial's motion for summary judgment is granted and Mazda's claim for a pro rata abatement of rent is dismissed as a matter of law.

### Dismissal of Barclays as a Party

 865 Centennial has moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 56, dismissing Barclays as a party to this action. In December, 1997,

Barclays assigned to 865 Centennial all of its "right, title and interest" in the present action against Mazda. (Burke Aff., Ex. BB). Consequently, 865 Centennial, as assignee, "stands in the shoes" of Barclays, the assignor, and is subject to any defenses and right of set-off Mazda has against Barclays. *See James Talcott, Inc. v. H. Corenzwit & Co.,* 76 N.J. 305, 309–10, 387 A.2d 350 (1978). As Barclays' assignee, 865 Centennial has also assumed the duties and liabilities of Barclays with respect to Mazda's claims in the instant action. *See id.* Since there is no basis upon which Barclays should remain a party to this action, 865 Centennial's motion for summary judgment is granted.

 This matter having come before the Court on the motion of defendant 865 Centennial Avenue Associates Limited Partnership ("865 Centennial") seeking (1) reargument of this Court's Order, dated June 23, 1998; (2) leave to amend the pleadings; and (3) interest on sums due; and it appearing that 865 Centennial seeks reargument of the portion of this Court's Order which (1) dismissed the Complaint and 865 Centennial's cross-claim; (2) concluded that Mazda Motor of America, Inc. ("Mazda") validly terminated its lease; (3) ordered 865 Centennial to pay $71,000 to Mazda for the unamortized cost of the parking lot; (4) concluded that Mazda surrendered the premises on April 15, 1996; and (5) dismissed 865 Centennial's cross-claim for double rent; and it further appearing that a motion for reargument pursuant to Fed.R.Civ.R. 59(e) and L.Civ.R. 7.1(g) may only be granted for one of three reasons: "(1) an intervening change in the controlling law has occurred, (2) evidence not previously available has become available, or (3) it is necessary to correct a clear error of law or to prevent manifest injustice." *North River Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir.1995); *Bermingham v. Sony Corp. of America, Inc.,* 820 F.Supp. 834, 856–57 (D.N.J.1992), *aff'd,* 37 F.3d 1485, 1994 WL 512382 (3d Cir.1994); and it further appearing that since June 23, 1998, when the

---

**10.** Mazda ceased paying rent and property taxes as of February 1, 1996. Since it did not vacate the Leased Premises until April 15, 1996 and it is not entitled to an abatement of rent, it is liable for the full amount of rent and property taxes for the period February 1, 1996 through April 15, 1996.

Court filed its Order, there has been neither a change in the controlling law nor the available evidence; and it further appearing that the Court did not overlook any factual or legal matters. *See* L.Civ.R. 7.1(g); and it further appearing that 865 Centennial seeks leave to amend the pleadings pursuant to Fed.R.Civ.P. 15(a) to assert a claim for double rent; and it further appearing that the presumption that leave to amend shall be freely granted disappears after entry of judgment. *See Illinois Conference of Teamsters and Employers Welfare Fund v. Steve Gilbert Trucking,* 71 F.3d 1361, 1368 (7th Cir.1995); and it further appearing that a court may deny a motion to amend where the motion was filed after the court granted summary judgment dismissing the complaint and the party seeking to amend has no reasonable justification for the delay. *See Illinois Conference,* 71 F.3d at 1368; *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union–Management Pension Fund,* 800 F.2d 742, 749 (8th Cir.1986); and it further appearing that 865 Centennial filed its cross-claim against Mazda eighteen months ago; and it further appearing that 865 Centennial offers no justification for the undue delay in seeking to amend its pleadings; and it further appearing that in its brief in opposition to 865 Centennial's motion for summary judgment dated March 13, 1998, Mazda notified 865 Centennial that it had failed to plead a claim for double rent; and it further appearing that 865 Centennial had ample opportunity to seek leave to amend its pleadings to assert a claim for double rent at any time between March 13, 1998 and June 23, 1998, when the Court filed its Order; and it further appearing that 865 Centennial also seeks to amend the pleadings to assert a claim for double rent pursuant to Fed. R.Civ.P. 15(b); and it further appearing that Rule 15(b) permits parties to amend their pleadings to include issues that are not raised in the pleadings but are tried by express or implied consent of the parties; and it further appearing that Fed.R.Civ.P. 15(b) only applies to situations where the issue has been tried. *See Albanese v. Bergen County, New Jersey,* 991 F.Supp. 410, 421 (D.N.J. 1997); and it further appearing that no trial has occurred; and it further appearing that

Paragraph 15(b)(5) of the Lease provides that "[i]nterest on any sums due to the Landlord [865 Centennial] from Tenant [Mazda] (or vice versa) under this Lease shall accrue from the date such sums become due and payable, at a variable rate equal to two (2%) percent above prime interest rate as set daily by Chase Manhattan Bank, N.Y.C., N.Y."; and the Court having considered the submissions of the parties; and good cause appearing;

IT IS on this day 3rd of August, 1998,

ORDERED that 865 Centennial's motion for reargument pursuant to Fed.R.Civ.R. 59(e) and Local Civil Rule 7.1(g) is hereby DENIED;

IT IS FURTHER ORDERED that 865 Centennial's motion for leave to amend the pleadings pursuant to Fed.R.Civ.P. 15 is hereby DENIED;

IT IS FURTHER ORDERED that in accordance with Paragraph 15(b)(5) of the Lease Mazda shall pay interest on all sums due to 865 Centennial and 865 Centennial shall pay interest on all sums due to Mazda; and

IT IS FURTHER ORDERED that a copy of this Order will be served on all parties within seven (7) days of the date of this Order.